# BANK OF COMMERCE OF OWENSBORO, RESPONDENT, *v.* FUQUA ET AL., APPELLANTS.

[Argued October 9, 1891.  Decided December 14, 1891.]

APPEAL—*Judgment.*—An appeal will lie from part of a judgment. (*In re Davis' Estate, ante,* p. 1, cited; *Barkley* v. *Logan,* 2 Mont. 296, and *Plaisted* v. *Nowlan,* 2 Mont. 359, distinguished.)

*Same — Judgment roll — Motion to strike out.*—A motion to strike out a portion of a pleading, being in effect a demurrer, constitutes part of the judgment roll, and an order sustaining the same being deemed excepted to, is reviewable on appeal from the judgment without a bill of exceptions. (*Barber* v. *Briscoe,* 8 Mont. 214; *Dodson* v. *Nevitt,* 5 Mont. 518, cited.)

PLEADING—*Sham averments.*—An averment in an answer to a complaint on a bill of exchange, providing for the payment of attorneys' fees in case of suit, that such fees were not due at the time the suit was filed, is properly stricken out as sham.

*Same—Statute of foreign state.*—Where the statute of another State is relied upon as a defense it must be pleaded by setting out in terms so much thereof as may be applicable, and an averment that a contract is by the laws of another State illegal and void is insufficient.

BILLS AND NOTES—*Stipulation for attorneys' fees — Negotiability.*—A stipulation in a bill of exchange for the payment of all attorneys' fees in case of a suit thereon is not invalid, nor is the negotiability of the instrument thereby destroyed.

*Appeal from First Judicial District, Lewis and Clarke County.*

Action on bill of exchange.    Judgment was rendered for the plaintiff by HUNT, J.

*T. E. Crutcher*, for Appellant.

I.    The bill of exchange declared on contains the following clause: "The parties hereto agree to pay all attorneys' fees in case of suit on this paper."    We think the weight of authority is that stipulations for attorneys' fees in case of suit in notes or bills are void, as being stipulations for a penalty, against public policy, and as attempts to evade the usury laws.    (*Bullock* v. *Taylor*, 39 Mich. 137; 33 Am. Rep. 356; *Myer* v. *Hart*, 40 Mich. 517; 29 Am. Rep. 553; *Shelton* v. *Gill*, 11 Ohio, 417; *State* v. *Taylor*, 10 Ohio, 378; *Dow* v. *Updyke*, 11 Neb. 95; *Boozer* v. *Anderson*, 42 Ark. 167; *Merchants' Nat. Bank* v. *Sevier*, 14 Fed. Rep. 662; *Thomasson* v. *Townsend*, 10 Bush, 115; *Witherspoon* v. *Musselman*, 14 Bush, 214; 29 Am. Rep. 404; *Gaar* v. *Louisville Bank Co.* 11 Bush, 180; 21 Am. Rep. 209; *Rilling* v. *Thompson*, 12 Bush, 310.)    There being no usury laws in this State, we do not make the point that it is an attempt to evade such laws, but it is in the nature of a penalty, unjust to the unfortunate debtor and contrary to public policy.

II.    We further insist that although the court may find that the stipulation for an attorney's fee is legal and binding in this State, such fees cannot be recovered in the suit on the note. The language in the bill is a separate and independent contract, the promising of a certain sum upon the happening of a contingency, and until that contingency happens and the attorney's fee is earned there is nothing to pay.    (*Easter* v. *Boyd*, 79 Ill. 325; *Penney* v. *Jorgensen*, 27 Minn. 26.)

III.    The appellant, G. W. Crutcher, can be held only as indorser, in any event.    The complaint charges him both as acceptor and indorser.    He denies in his answer that he was one of the acceptors, but does not negative the allegation that he was an indorser.    Under the pleadings he could not be held as an acceptor, but might be an indorser.    This being true, he is not liable for the attorneys' fees stipulated for in the note or bill.    (*Short* v. *Coffeen*, 76 Ill. 245; *Ware* v. *City Bank of Macon*, 59 Ga. 840; *Van Vleet* v. *Sledge*, 45 Fed. Rep. 753; *Bullock* v. *Taylor*, 39 Mich. 137; 33 Am. Rep. 356.)

IV. The bill sued on in this case is an inland bill of exchange drawn in the State of Kentucky, indorsed in Kentucky, and payable in that State, as shown by the complaint; therefore, as to its validity, legality, etc., is governed by the laws of Kentucky. (1 Randolph on Commercial Paper, par. 22, and authorities there cited; *United States* v. *North Carolina,* 136 U. S. 211.) A contract is presumed to have been made with reference to the laws of the place where it is made, and with knowledge of those laws, and the rule applies to contracts made in another place as well as those made in the place where the action is brought. (1 Randolph on Commercial Paper, p. 20; *Walker* v. *Whitehead,* 16 Wall. 314; *Pritchard* v. *Norton,* 106 U. S. 124; *Teal* v. *Walker,* 111 U. S. 242; *Scudder* v. *Union Nat. Bank,* 91 U. S. 406; *Wilcox* v. *Hunt,* 13 Peters, 378; *Wilson* v. *Davis,* 1 Mont. 195.) The stipulation for an attorney's fee in this case is void in the State of Kentucky. (*Thomasson* v. *Townsend,* 10 Bush, 115; *Gaar* v. *Louisville Bank Co.* 11 Bush, 180; 21 Am. Rep. 209; *Witherspoon* v. *Musselman,* 14 Bush, 214; 29 Am. Rep. 404.) In the case last cited the court say, an agreement to pay a reasonable attorney's fee in the body of the note, if it is collected by suit, is absolutely void, it is contrary to the public policy of our laws, it is an agreement to pay a penalty, tends to the oppression of the debtor, and to encourage litigation. Such an agreement is not in contravention of any express statute, but null and void, because so decided by the Supreme Court of the State of Kentucky for the reasons given. No right of action can arise from an illegal contract, and this rule applies not only when the contract is expressly illegal, but whenever it is opposed to public policy. (*Hooker* v. *Vandewater,* 4 Denio, 349; 47 Am. Dec. 258.) The defense set up in paragraph 5 of the answer could have been interposed successfully in the State of Kentucky, and was a complete and perfect defense there, and therefore a good defense here. It is a general rule that a defense or discharge, good by the law of the place where the contract is made or to be performed, is to be held of equal validity in every other place where the question may come to be litigated. (Story on Conflict of Laws, § 331.) Parsons lays this down as the universal rule: "A contract valid where made is valid

everywhere, but if void or illegal by the law of the place where made, it is void everywhere." (2 Parsons on Contracts, star p. 570.) In view of the decisions of the Supreme Court of the State of Kentucky, the stipulation for an attorney's fee was a *nudum pactum*, and will be so construed by this court. A contract made and to be performed in another State should be construed in accordance with the laws and decisions of that State. (*Knox* v. *Gerhauser*, 3 Mont. 275.) It is the presumption that all the parties to the bill in this case treated and considered the stipulation for an attorney's fee as a *nudum pactum*, and with full knowledge and understanding that it could not be enforced. It is not to be presumed that parties intended to make a contract that the law does not allow. (*Bank of Kentucky* v. *Adams Express Co.* 93 U. S. 174.)

*Henry G. McIntire*, for Respondent.

I. Plaintiff's motion to strike out paragraphs 4 and 5 (see opinion) of defendant's answer was well founded. Even if there were any merit in the allegation of paragraph 4 of said answer, and that the attorney's fee did not become due until the end of the suit, the matter is not properly pleaded. Nor is paragraph 5 of said answer properly pleaded. If there is any such law as is attempted to be set up in said paragraph in the State of Kentucky it should have been pleaded as a fact, so that, if necessary, issue might have been joined thereon. (*Swank* v. *Hufnagle*, 111 Ind. 453, and cases cited; *Temple* v. *Brittan*, Ky., Nov. 7, 1889, 12 S. W. Rep. 306; *Central Trust Co.* v. *Burton*, 74 Wis. 329; *Sells* v. *Haggard*, 21 Neb. 357; *Leatherwood* v. *Sullivan*, 81 Ala. 458; *McLeod* v. *Conn. & P. R. R. Co.* 58 Vt. 727.) Instead of so pleading this as a fact the allegations of paragraph 5 are merely conclusions of law. It is patent that paragraphs 4 and 5 were sham and irrelevant, and the court below did not err in striking them out. (*a*) Because it is self-evident that there is nothing in paragraph 4 of said answer. No attorney's fee is recoverable until suit was brought on the bill of exchange. To ask for an attorney's fee, therefore, is not premature. But, besides this, such attorney's fee " is not a cause of action, but like costs a mere incident to

it." (*Carriere* v. *Minturn*, 5 Cal. 435; *Kern Valley Bank* v. *Chester*, 55 Cal. 49.) (*b*) Even if paragraph 5 of said answer were a proper plea of the law of Kentucky, it must be remembered that on questions of practice, procedure, costs, etc., the *lex fori* and not the *lex loci contractus* governs. As laid down in 5 Cal. 432, the attorney's fee is but an incident like costs, and therefore whether, and to what amount an attorney's fee or any costs should be allowed, is dependent on the Montana law, where this suit is brought, and not the Kentucky law. Otherwise it might with equal force be said that our courts are bound by the Kentucky law concerning sheriff's and clerk's fees, or any of the incidentals to a suit of this nature. We submit that it is to be conclusively presumed that the defendant impliedly, at least, agreed to pay such costs as the *lex fori* would pronounce against him. But we submit that the undenied allegations of this complaint show that defendant Crutcher's name was put upon the bill of exchange on the day of its date, prior to its acceptance by the drawees, of whom he was one, and at a time when he was neither a holder nor payee. Crutcher's liability is, therefore, by the weight of authority, that of a co-maker or promisor. (4 Lawson's Rights, Remedies, and Practice, § 1575, and n. 1, p. 2736.)

II.   We do not agree with counsel for appellants that stipulations for attorneys' fees in notes or bills are void, but on the contrary, we submit that such stipulations are not void, as is upheld by the vast weight of authority. (*Clark* v. *Nichols*, 3 Mont. 372; *Maryland etc. Co.* v. *Newman*, 60 Md. 584; 45 Am. Rep. 750; *Bowie* v. *Hall*, 69 Md. 433; 9 Am. St. Rep. 433; *Wilson S. M. Co.* v. *Moreno*, 7 Fed. Rep. 806, and cases cited; *Peyser* v. *Cole*, 11 Or. 39; 50 Am. Rep. 451; *Exchange Bank* v. *Tuttle*, N. M. Jan. 1890, 23 Pac. Rep. 241; 1 Daniel on Negotiable Instruments [4th ed.], §§ 62, 62 a; 1 Randolph on Commercial Paper, § 205. See note to *Merchants' Nat. Bank* v. *Sevier*, 14 Fed. Rep. 667–675.) It has been universally held in practice in Montana that such stipulations are legal and binding. The attorneys of Montana have certainly not required any guidance in the past in insisting upon this as being a valid stipulation and one which they are eager to see enforced. The maker of a note or bill of exchange with such a stipulation

is liable upon the same.    And so we submit is also any indorser or acceptor.    (See *Smith* v. *Muncie Nat. Bank,* 29 Ind. 158; *Hubbard* v. *Harrison,* 38 Ind. 323; 1 Randolph on Commercial Paper, § 205; 1 Daniel on Negotiable Instruments [4th ed.], § 62 *a*; *British Bank* v. *Ellis,* 6 Sawy. 97; 2 Fed. Rep. 44.)    It is possible that, as counsel contends, the stipulation for an attorney's fee is held invalid in the State of Kentucky, but if he wished to avail himself of that law he should have properly pleaded it.

HARWOOD, J. — The bill of exchange sued on in this action was drawn for the principal sum of four thousand dollars, and provided for interest at six per centum per annum after maturity until paid, and that "the parties hereto agree to pay all attorney's fees in case of suit on this paper."    The defendants, one of whom is appellant, were, according to the allegations of the complaint, both acceptors and indorsers of said bill of exchange.

Judgment was rendered against appellant, G. W. Crutcher, one of the alleged acceptors and indorsers, for the said principal sum of four thousand dollars, together with four hundred dollars for attorney's fees for services in prosecuting the action, and costs of suit.    This appeal is from that portion of the judgment relating to attorney's fees allowed in said action.

Respondent contends that an appeal from part of a judgment is not proper practice, and cites in support of his position the case of *Barkley* v. *Logan,* 2 Mont. 296, determined at the August term, 1875, and the case of *Plaisted* v. *Nowlan,* 2 Mont. 359, determined at the January term, 1876, of the Supreme Court of Montana, in which latter case the former was again considered on motion for rehearing, and affirmed.    These cases would support respondent's position but for the fact that since the determination of them the statute under which they were determined has been so amended as to provide for an appeal from the judgment, "or any part thereof."    The sections of the statute (369 and 380) referred to in the cases cited are as found in the Civil Practice Act, enacted by the seventh session of the legislative assembly, convened in 1871.    Now, in 1877, about one year following the announcement of the decisions cited

*supra,* the Code of Civil Procedure was revised by the legis-
lative assembly at the tenth session thereof, and the same sec-
tions again appear in the Code as sections 408 and 431 (10th
Sess. Laws), and in the latter section appears the additional
words, "or any part thereof," making the section read: "An
appeal may be taken to the Supreme Court in the following
cases: *First,* from a final judgment, or any part thereof, entered
in an action or special proceeding commenced in those courts, or
brought into those courts from other courts." The statute has
since remained in that form. We therefore hold that an appeal
may be prosecuted from part of a judgment. (See *In re Davis'
Estate, ante,* p. 1.) In California, under statutes very similar,
the practice is to entertain an appeal from part of a judgment.
(Hayne on New Trial and Appeal, § 185, p. 562.)

Appellant, G. W. Crutcher, as a defendant in said action,
appeared, and answered said complaint, and, among other aver-
ments, set forth two paragraphs as follows:—

"4. This defendant, for answer to the seventh paragraph
of said plaintiff's complaint, alleges that said attorney's fees in
said suit provided for were not due at the time this suit was filed.

"5. And for further answer to said seventh paragraph he
alleges that the bill herein sued on was, as alleged in said com-
plaint, made in the State of Kentucky, and payable in that
State, and said contract was to be wholly performed in that
State, and that by the laws of the State of Kentucky the sum
of two dollars and fifty cents, and no more, is provided for by
the statutes of the said State of Kentucky in such cases, and
that any contract for a greater sum as attorney's fees is by the
laws of said State of Kentucky illegal and void, and that no
greater sum than two dollars and fifty cents can be recovered in
said State under the contract set out in the complaint herein."

These paragraphs plaintiff's counsel moved the court to
strike out of said answer, on the ground that the averments
therein contained were sham and irrelevant allegations, and
constituted no defense to plaintiff's complaint. The court sus-
tained said motion, and struck from the answer said paragraphs
4 and 5.

The said motion and order appear in the record, and the
appellant complains that the court erred in said proceedings;

but respondent interposes the objection that said proceedings of the court below are not properly before this court for review on appeal from the judgment, because, as he contends, said motion and the order of the court thereon are not part of the judgment roll. This objection leads into a region of practice much debated by the profession and bench in this jurisdiction, commencing with the case of *Noteware* v. *Sterns,* 1 Mont. 314, and running through a number of decisions, which discussion, perhaps, as intimated by the learned judge in *Barber* v. *Briscoe,* 8 Mont. 214, has tended rather to entangle and obscure the region than to trace plain paths through it. If this be true, it warns us to look well to our bearings from the stand-point of statute and principle when we enter here. It may have so appeared, with much reason for it, to Justice Liddell, in treating that case; but with the opinion in that case and the statute we do not view the point with so much embarrassment, nor need we dwell long upon it. In the opinion just cited, section 290 of the Code, which prescribed what matters shall be deemed excepted to — i. e., what proceedings of the court the law reserves an exception to in favor of the party desiring to have the same reviewed — was first considered. It is then observed: "When we come to examine the matters which are deemed excepted to it will be seen that there are two kinds — those orders, decrees, and rulings which appear upon the face of the pleadings; and the other is of that class where the decision, order, or ruling is based upon evidence *dehors* the pleadings." And again: "The mere fact that the law has reserved an exception will not avail a party any more than if he had not excepted, unless the grounds and reasons, with so much of the evidence as is necessary to explain the point, be embodied in a bill of exceptions properly settled and signed, as is required by the Code of Civil Procedure. . . . . We have two lines of authorities . . . . founded upon the distinction above stated, perfectly in accord with the strict letter of the statute, and in conformity with the California authorities on the same subject. The second paragraph of section 306 of the Code of Civil Procedure defines what shall constitute the judgment roll, specifying the summons, pleadings, verdict, or findings of the court, commissioner, or referee, all bills of exceptions taken and filed in said action, and copies of orders

sustaining or overruling demurrers." The Montana cases are then reviewed, and it is further said: "From these cases it appears that when the order, decision, ruling, or other matter deemed excepted to by law is apparent upon the face of the pleadings, no formal bill of exceptions is necessary in order to have the ruling reviewed on appeal based upon the judgment roll."

The correct distinction upon this point of practice appears to be there expressed, and, in our view, that case goes far towards reconciling the two lines of Montana cases which are mentioned as being wholly at variance.

In the case at bar the judgment roll is brought here on appeal from the judgment, and we are asked to review an order striking out a portion of appellant's answer. This order is deemed excepted to by the provisions of section 290 of the Code of Civil Procedure. It is provided by section 306 of the Code that the judgment roll shall include, among other papers, all pleadings and copies of orders sustaining or overruling demurrers. Now, a motion to strike out a portion of a pleading is in fact and in substance a demurrer to that portion attacked. This motion is used to trim off and cast out improper matter inserted in a pleading which contains proper averments, while the demurrer is made use of to root up and cast out the whole pleading at which it is directed. (Bliss on Code Pleading [2d ed.], § 423.) Such a motion being of the nature of a demurrer, which is part of the judgment roll, and the order sustaining the same being deemed excepted to, it is held reviewable on appeal from the judgment. In the case of *Dodson* v. *Nevitt*, 5 Mont. 518, a motion was made to strike out a counter-claim set up in the answer, and sustained. This proceeding was held reviewable on an appeal from the judgment, on the ground that such motion was in the nature of a demurrer.

Was the action of the court in striking out said paragraphs 4 and 5 erroneous? As to paragraph No. 4, we unhesitatingly deem it sham, and without force as a defense. The language of the clause in the bill of exchange as to attorney's fees is: "The parties hereto agree to pay all attorney's fees in case of suit on this paper." Appellant reasons that this is a promise of a certain sum upon the happening of a contingency, and until that

contingency happens, and the attorney's fee is earned, by prosecuting the action to judgment, there is nothing to pay, and that such fee cannot be recovered in the same action. It seems to us that the contingency for the employment of an attorney arose when default was made in the payment of said bill, at the time and place of payment expressed therein; and that the attorney's fee, if lawful to be charged, was earned when judgment was obtained, and was proper to be allowed therein. It was incidental to the enforcement of said debt by suit, and was a proper part of the collection to be made in the same suit, if lawful at all.

Paragraph No. 5 of the answer is an attempt to plead a statute of the State of Kentucky, and also, as we are informed by appellant's counsel, the construction of such statute by the courts of that State. Does that paragraph accomplish the purpose intended? It is a rule of the law relating to contracts, with but few exceptions, not applicable in this case, that, if a contract is void by reason of the laws of the place where the same is made and is performable, the same rule will be applied by the courts of another State where such contract is sought to be enforced, although such contract is not obnoxious to the laws of the latter jurisdiction. (2 Parsons on Contracts, 582; 2 Parsons on Notes and Bills, 317; Story on Bills, § 129; 1 Story on Contracts, § 802; Bishop on Contracts [enlarged ed.], § 1390.)

But in order to have such foreign law applied in another jurisdiction it must be brought to the attention of the court by setting out so much thereof as is applicable, and proving the same. This is the rule at common law (1 Chitty on Pleading, 239); and it does not appear to have been changed by the Codes. (Bliss on Code Pleading, 183, 184, 304.) The case of *Throop* v. *Hatch*, 3 Abb. Pr. 23, being directly in point, and the language so appropriate to this subject, we quote a few observations therefrom. The court, by Allen, J., says: "If the plaintiff is driven to the statute laws of the States of Ohio and Michigan to maintain this action, and bound to show that by the statutes of those States the trusts which he seeks to enforce are valid, he should have set out, at least substantially, the statutes upon which he relies. The laws themselves are to

be averred and proved in the same manner as other facts, and
their existence is to be proved by copies of the statutes, properly
exemplified, as other documents are.  The averment that the
trusts are, by the laws of the States in which the lands are
situated, valid and subsisting trusts, is therefore nothing more
than an averment of the conclusion of the pleader, based (1)
upon his knowledge of the existence of certain statutes; and
(2) upon his construction of those statutes."  The following
cases hold to the same effect: *Phinney* v. *Phinney*, 17 How. Pr.
197; *Carey* v. *Cincinnati etc. R. R. Co.* 5 Iowa, 357; *Devoss*
v. *Gray*, 22 Ohio St. 159; *Swank* v. *Hufnagle*, 111 Ind. 453;
*Central Trust Co.* v. *Burton*, 74 Wis. 329; *Sells* v. *Haggard*,
21 Neb. 357; *McLeod* v. *Conn. etc. R. R. Co.* 58 Vt. 727.)
In the case at bar the pleader alleged that by the statute of
Kentucky two dollars and fifty cents only is allowed as a fee to
an attorney in such a case, and "that a contract for a greater
sum as attorneys' fees is by the laws of said State of Kentucky
illegal and void."  This is an allegation of the pleader's con-
clusion as to what the statute of Kentucky provides in this
respect, but what that law is in terms is not set forth.  The
court, therefore, properly granted the motion to eliminate from
the answer that averment.  And the party, having failed to
avail himself of the opportunity offered by the court to amend
his pleading, has lost the benefit of the provision of the law
of Kentucky (if there is such a law) applicable to the bill of
exchange, which it appears was made there, and was by its
terms payable there.

Independently of the question as to what the law of Ken-
tucky is, and its effect upon the stipulation in said bill for the
payment of attorney's fee, appellant contends that said provision
ought to be held invalid here, on the ground that such a stipu-
lation in a contract is obnoxious to sound public policy, and in
support of this position cites cases from certain States, and also
the case of *Merchants' Nat. Bank* v. *Sevier*, 14 Fed. Rep. 662,
decided in the United States District Court for the eastern dis-
trict of Arkansas, by Judge Caldwell, and concurred in by
McCrary, J.  Respondent meets this proposition by the cita-
tion of a line of cases from the courts of last resort in other
States of the Union, and also finds support for his side of the

proposition in the Federal Courts, in the case of *Wilson S. M. Co.* v. *Moreno,* 7 Fed. Rep. 806, decided by the Circuit Court for the district of Oregon, per Deady, J.; and also the case of *Howestein* v. *Barnes,* decided in United States Circuit Court, Kansas district, in 1879, per Foster, J., cited and commented on in note to *Witherspoon* v. *Musselman,* 29 Am. Rep. 406; also, the case of *British Bank* v. *Ellis,* 6 Sawy. 96, decided by Judge Deady in the Circuit Court, district of Oregon. We are also cited to 1 Randolph on Commercial Paper, § 205; 1 Daniel on Negotiable Instruments, § 62; the able notes by Mr. Hamilton, appended to the case of *Merchants' Nat. Bank* v. *Sevier, supra;* and also the valuable note by Mr. Brown, reporter, appended to the case of *Witherspoon* v. *Musselman,* 29 Am. Rep. 406. We deem it unnecessary to cite the cases which can can be collected in support of the different views of this subject, because this has been ably done by the commentators, editors, and annotators referred to, whose works are readily accessible to those desiring to investigate the subject. It will be seen by a study of the cases that during the past twenty years a vigorous examination of this interesting question relating to commercial law has been going on in the courts of this country, which has resulted in no harmony of conclusions. The subject has been so critically and thoroughly treated from every point of view there remains very little original to be said thereon.

In the fourth edition of Daniel on Negotiable Instruments, published this year, the author divides the cases upon this subject into four classes, as follows: First, those which sustain the validity of the stipulation and the negotiability of the instrument. The second class of cases enforces the stipulation, but denies the negotiability of the instrument. The third class maintains the negotiability of the instrument, but denies validity to the stipulation, because, as those cases hold, it amounts to a penalty, tends to encourage litigation, is oppressive to debtors, and is against the policy of the law, and therefore void. The fourth class of cases holds that the stipulation renders the transaction usurious, and subjects the instrument to the operation of the statutes against usury.

Under each of these heads a group of cases will be found noted by the author.

We will briefly refer to the grounds upon which the stipulation in the bill before us would, under any group of such decisions, be held void, or held to otherwise affect the instrument as negotiable paper; and herein we commence with the fourth class, and follow in order back to the first, where it would be held valid, and in no way vitiate the character of the obligation as a negotiable instrument.

The fourth class treats the stipulation as a condition which renders the transaction usurious. While in this State there is at present no law which would be infringed on that particular ground, we do not subscribe to the reasoning whereby it is assumed that the stipulation is a device to evade the law against usurious interest. We are inclined rather to adopt the reasoning of Judge Deady upon this point. He says: "The ruling that such stipulation makes the note usurious is founded upon the unauthorized assumption of fact that the sum agreed to be paid as an attorney's fee in case the note is not paid at maturity is not what it purports to be, but illegal interest in the disguise thereof. Of course, where it appears that such is the real nature of the transaction, it should be treated accordingly. But the fact cannot be assumed, any more than that a like sum of the alleged principal is illegal interest in disguise. Accordingly, the tendency of the decisions hostile to this stipulation is to leave these untenable grounds, and hold it void upon the ground that it is a convenient device for usury, and tends to the oppression of the debtor."

In the case at bar the stipulation is to pay attorney's fees in the event of suit "on this paper," and from that point of view we are considering the objection that a court where usury laws prevail might assume that the provision was a device to evade such laws. Now, how would a creditor obtain, through such stipulation, a greater sum for the use of money than the law permits? The debtor in such a case may pay the amount of the principal and the lawful interest, and then the stipulation would be null, for no suit could be maintained on the obligation, and of course no sum collected from the debtor by way of attorney's fee. But, in order to carry out the scheme to evade the law against usury, and enable the holder of the paper to collect more than the law allows for the use of money, the

debtor must collude against his own interest in a case where he is in no way bound so to do, and default in the payment of the obligation, so as to give effect to the stipulation for attorney's fees, and suffer such fees and other costs of suit to be enforced against him.   Moreover, the creditor, in order to profit from this proceeding, must obtain from the attorney a portion of the fee allotted to him for his services, at the end of the suit; and, where the stipulation is such that reasonable compensation only is allowable, this method to avoid the law against usury involves the further proposition that the attorney will divide the reasonable fee allowed for his services with the would-be usurer. If that would be the practical working of this method to evade the laws against usury, the assumption that the stipulation is made for that purpose, or could be used for that purpose, involves the assumption that human nature is so changed that men will connive against their own interests, and aid and abet the perpetration of wrongs against themselves, without the slightest coercion, and voluntarily use the law which was made for their protection to work to their injury.   It has been a maxim sanctioned by the experience of men from olden time that the presumption is that when a man acts voluntarily he will not act against what he knows to be his own interest.   If the stipulation was for a certain sum or per centum for attorney's fees, which was grossly out of proportion to the value of the services, it might well be looked upon with suspicion in connection with laws forbidding usurious charges for loan of money. But where a reasonable attorney's fee is provided for, dependent on the event of suit for collection of the debt, and such fee is allowed for such services actually performed, where judgment is recovered, we cannot perceive how the usurer could profit by it.   So in cases where the stipulation is that the debtor will pay expenses of collection, without making it dependent on the event of a suit, the whole proposition is changed.   Under such a condition demands might be put forth which a court might look upon as incompatible with the provisions of law against usury.   But as remarked by Judge Deady, is it not an unauthorized assumption for a court to presume that the stipulation is made to evade the law against usury, without any showing to that effect?   As he says, it would be as proper to

presume that part of the principal is usury in disguise, without any showing to that effect. ( *Wilson S. M. Co.* v. *Moreno, supra.*)

The third class of cases on this subject as classified by Mr. Daniel maintains the negotiability of the instrument, but holds that the stipulation is penal and void. This group of cases is closely allied to those cited under the fourth class, and the reasons affirmed in both are very much alike, except that some cases of the third class do not proceed upon the ground that statutes against usury are infringed by the stipulation, but without the aid or supposed aid of statutes declare it void on the ground that it encourages litigation, is oppressive to the debtor, and is therefore against the policy of the law. These, with other considerations, were summarized in the case of *Merchants' Nat. Bank* v. *Sevier, supra,* as ground for holding the stipulation, on general principles, without reference to statute, void. In considering the question from this point of view, it should be borne in mind that it is a stipulation of contract between parties which the court is asked to declare void, and, as one ground therefor, the obligor urges that it is oppressive. Now, courts of equity, even, do not declare a contract void merely because it is inexpedient or improvident. (2 Pomeroy's Equity Jurisprudence, § 928.) Nor do we find this provision of the instrument bearing a likeness to those contracts which the law generally condemns as against public policy (Bishop on Contracts [enlarged ed.], §§ 467–549), unless it be considered champertous, and we have not seen that view seriously urged.

If this stipulation could be referred to any class of contracts which have been held contrary to public policy by a long line of decisions, and fit to the principle carried out in such cases, there would be more support to that view. It is not against public policy nor against the spirit of the law in these times that attorneys should receive just and reasonable compensation for services. Nor is it in principle unlawful for one to contract with another to re-imburse the latter for a lawful expenditure caused by the default or wrong committed by the promisor. If the main obligation is valid, and the obligor can pay it, without question he should do so at maturity; and it would seem merely stubborn denial of another's right to compel the obligee

to go into court to enforce payment, and suffer the delay, inconvenience, and expense of such proceeding. Now, the parties have provided for this condition of things in part by a stipulation in the instrument that in such event, if the obligee is driven into court by the default of the obligor, the latter shall pay a reasonable attorney's fee for the prosecution of the action. This has been held void as against public policy, because it is oppressive to the debtor. We cannot see on what principle it should be so held. In such a case, as just stated, the oppression is the other way—it proceeds from the party who has borrowed the other's money or got his goods, and refuses to pay for the same when he is able so to do. But it may be said that, in the event the debtor's circumstances are such that he cannot repay the debt when due, it would be oppressive to have judgment recorded against him for the amount and attorney's fees. In such a case a judgment against one, which cannot be enforced, will be poor satisfaction for what the obligor received in consideration for the note; and in such case he may offer to confess judgment without action, at the maturity of the note, and then it is not at all likely judgment would be given for attorneys' fees, if that was shown.

It is not uncommon to allow reasonable attorney's fees in case of foreclosure of mortgage. (See cases cited in note to *Merchants' Nat. Bank* v. *Sevier*, *supra*, to which we add the case of *Clark* v. *Nichols*, 3 Mont. 372.) And such a condition does not appear to have received the attacks upon it which have been aimed at the same condition in a negotiable obligation without mortgage. It is hard to see why, viewed from the stand-point of public policy, the stipulation is not as obnoxious in one kind of an obligation as another. Besides, the mortgage is only collateral to the obligation to insure the payment thereof; and its enforcement is sometimes more oppressive to the debtor than a naked promise to pay, because the mortgage often takes property otherwise exempt from execution.

But will the stipulation encourage litigation? Viewed from one side it will not. The debtor will not do anything to encourage the bringing of an action against himself, which involves his payment of a greater sum than would be called for without action. He will discourage that result, and to do so

he will see that his obligation is satisfied or extended. Is there any real motive for the creditor to unduly hasten into court with his note or bill of exchange, simply because his debtor would be required to pay the attorney's fee—a matter from which the creditor could personally gain nothing? Would he decline to grant reasonable extension to a solvent debtor, who was at the time unprepared to meet his obligation, and hurry into court for the sole purpose of wrenching from the debtor an attorney's fee? We do not believe that experience shows that these results follow. The bill before us found its way into court several months after its maturity, and the complaint avers that the payees had often been requested to pay the same, and this is not denied.

We come now to the second class of cases, which enforces the stipulation, but denies negotiability to the instrument. (See cases cited under this head in 1 Daniel on Negotiable Instruments, § 62.)

It is already perceived that those opposed to the stipulation are much divided among themselves in their views of its effect. The cases in this second class proceed upon the ground that, although the stipulation is valid as a condition, it is a condition incompatible with the nature of negotiable instruments, because it introduces an element of uncertainty as to the amount to be called for thereon. It has been pointed out by the commentators cited *supra* that, where the stipulation for an attorney's fee is dependent on the event of an action to enforce payment, the amount demandable at maturity is not at all affected thereby; and that, when suit is brought, and it is sought to enforce the stipulation along with the principal and interest of the note or bill, it is past due, and has ceased to be a negotiable instrument, in the full meaning of that term. This is readily perceived by every jurist, and this suggestion seems to take away much of the force of the idea that the stipulation introduces an element of uncertainty into the instrument, which, as a negotiable instrument, it is unable to carry. In the case of *Merchants' Nat. Bank* v. *Sevier, supra,* Judge Caldwell, in touching upon this view of the stipulation, says: "If a stipulation for an attorney's fee can be upheld upon the ground that it is a valid agreement upon sufficient consideration for the payment of a liquidated

sum, it is not perceived why a stipulation to pay the taxes of the payee, or his office rent, or the salary of his collector, or all of these and as many more as the genius of a rapacious creditor may devise, should not be upheld and enforced by the same mode of reasoning. Mr. Justice Sharswood, in *Woods* v. *North*, 84 Pa. St. 407; 24 Am. Rep. 201, following Chief Justice Gibson, characterizes such a provision as 'luggage,' which negotiable paper is unable to carry, and pertinently inquires: 'If this collateral agreement may be introduced with impunity, what may not be?' In Daniel on Negotiable Instruments, 49, it is said this inquiry is answered by the assertion that such provisions facilitate rather than encumber the circulation of such instruments; they are not 'luggage,' but ballast. Mr. Daniel's assertion is in the teeth of many adjudged cases, among which are well-considered judgments of such eminent jurists as Chief Justice Gibson, Mr. Justice Sharswood, and Mr. Justice Cooley." With great deference to these able jurists, for whose opinion we entertain profound respect, we think there is a difference between the stipulation for attorney's fee in the event of suit and a stipulation to pay taxes, office rent, collector's salary, horse hire, etc. The first stipulation depends upon the event of a suit after default of payment, and after the paper has ceased to be currently negotiable. While the paper is negotiable, and up to the very moment of instituting suit the amount demandable thereon is exact and certain. The other class of demands mentioned would be of a character which in their nature would render uncertain the sum to be demanded by the holder at maturity, and therefore an instrument containing such stipulations, by reason of the uncertainty of the sum to be called for at maturity, may well be held not to be a negotiable instrument. But no such stipulations are in the instrument before us, nor did the instrument sued on in the case last cited contain them.

We think, on the whole consideration, that the cases cited in the first class by Mr. Daniel, which sustain the validity of a stipulation for attorney's fee in the event of a suit and the negotiability of the instrument, are the most consistent with the principles of law in general, and with those special rules governing negotiable instruments. And we approve the view of Judge Deady, in *Wilson S. M. Co.* v. *Moreno, supra,* that the

attorney's fee, under such stipulation, in the event of suit, is incidental thereto, in the nature of costs, and as such is just and proper; and that the stipulation should be such as to leave the question of the reasonableness of the demand for services actually rendered within the supervision and control of the court.

Judgment is affirmed, with costs.

*Affirmed.*

BLAKE, C. J., and DE WITT, J., concur.

