IN RE PETITIONS OF JOSEPH E. WARRINGTON, et al., Executors of Elijah J. Baker, Deceased, and THE PEOPLES NATIONAL BANK OF LAUREL, to draw funds out of Court.

*(May* 8, 1935.)

LAYTON, C. J., and HARRINGTON, J., sitting.

*Andrew J. Lynch* for the executors of Baker.

*Frank M. Jones* for The Peoples National Bank of Laurel.

Superior Court for Sussex County, April Term, 1935.

LAYTON, C. J., delivering the opinion of the Court:

The question raised by the petitions to draw funds out of court necessitates a construction of *Section* 4204 of the *Revised Code of* 1915, which is,

"In all causes of action, suits, matters or proceedings brought for the enforcement of any note, bond, mortgage or other instrument of writing, if the plaintiff or lien holder in said action, suit or proceeding shall recover judgment in any sum, he shall also be entitled to recover reasonable counsel fees, which shall be entered as a part of the decree or judgment in said action, suit or proceeding, providing, however, that such counsel fees shall not in any such action, suit or proceeding. exceed five per centum of the amount decreed for principal and interest; and further provided, that such counsel fees

shall not be entered as a part of such decree or judgment, excepting as the note, bond, mortgage or other instrument of writing sued upon shall, by the terms thereof expressly provide for the payment and allowance thereof."

During the life time of Elijah J. Baker, R. E. Beers Lumber Company executed and delivered to him its judgment note for $6800, with warrant of attorney contained therein authorizing any attorney or prothonotary of any court of record to appear and to confess judgment, "together with collection charges of five per centum of the principal and interest of this obligation."

The note was entered in judgment by the prothonotary under the warrant of attorney.

The order of priority of the judgments against R. E. Beers Lumber Company, in so far as concerns this proceeding, was (1) Alonzo Tweedale, Receiver for The Peoples National Bank of Laurel, real debt $2500, (2) Elijah J. Baker, real debt $6800, (3) The Peoples National Bank of Laurel, real debt $5000.

The lands of the defendant company were sold under execution process issued on the first judgment, and, after satisfying taxes and the amount due under the execution, the balance of the fund $8066.39 was ordered paid into court.

After the above execution had been issued, and before the sale made thereunder, counsel for the executors of Baker caused execution to be issued on the second judgment, and the return showed a levy on goods and an order of the plaintiff's attorney that they remain unsold.

By order heretofore made there was drawn out of court an amount sufficient to discharge the second judgment with the exception of the counsel fee of five percent, included therein, amounting to $369.86, which sum The

Peoples National Bank of Laurel, by its petition, seeks to have applied to its judgment. It objects to the inclusion of this amount in the second judgment and to the allowance and deduction of this amount from the fund which would, of course, result in the reduction of the sum applicable to its judgment after the payment in full of the second judgment.

Its contention is that, under the statute, the court has power to determine the reasonableness of a counsel fee, even though it is definitely fixed in the instrument of writing; that the Baker note was not entered in judgment by an attorney; that no execution was necessary to be issued thereon as the judgment would have been paid in due course from the proceeds of sale in the hands of the Sheriff; that the action of counsel for the executors of Baker in ordering execution was wholly unnecessary; and, consequently, a fee of $369.86 is unreasonable and should not be allowed.

The position of counsel for the Baker judgment is that, by the statute itself, parties to an obligation may contract for the payment of reasonable counsel fees not in excess of five per centum of the amount decreed for principal and interest, and where, as here, the parties themselves have agreed upon a counsel fee of five per centum, such fee will be presumed to be reasonable.

The primary rule of construction is to ascertain and give effect to the legislative intention as expressed in the statute. The statute must be considered as an entirety, and effect should be given to each part thereof if possible. Furthermore, a statute will be construed so as to avoid unjust and oppressive consequences.

The delivery of an obligation to the prothonotary with an instruction to enter judgment thereon pursuant to the warrant of attorney, while not, in strictness, a suit or action,

is, nevertheless, a proceeding for its enforcement; and, according to the contention of counsel for the Baker judgment, this proceeding, resulting in a judgment by confession, entitles the plaintiff therein to have included in the judgment counsel fees as provided by the terms of the obligation if not in excess of the statutory maximum.

This contention is tenable only if the qualifying word "reasonable" is ignored.

■ The purpose of the statute was to impose upon a debtor some part, at least, of the expense of collecting the debt evidenced by his obligation, if legal action should become necessary, and to set at rest the doubt that a provision in an obligation authorizing the inclusion of a counsel fee, or collection charge, is void as against public policy.

But, we think, it was not the legislative purpose to impose the burden of a counsel fee upon the debtor in all circumstances, even though the obligation authorizes the inclusion thereof in a judgment to be obtained, nor to permit the parties to obligations, in reality, perhaps, the creditors, to constitute themselves the judges of the reasonableness of the counsel fee provided for in the obligation.

■ Due effect must be given to the word "reasonable." A reasonable counsel fee is such as would be proper for a litigant to pay his attorney for his services in collecting a debt, and more ought not to be imposed upon the debtor.

At the time an obligation for the payment of money is given, it is, necessarily, unknown what, if any, legal action will be necessary to enforce its payment, and therefore, impossible then to determine what a reasonable fee would be. Notes, bonds, mortgages, contracts of sale and other obligations are frequently executed with no thought of the necessity for legal action for their enforcement. In the

printed forms of these obligations the maximum counsel fee of five per centum frequently appears. Often they are given with the knowledge that they will be entered in judgment as additional security, but also in the belief that if they are paid without legal action no counsel fee will be demanded. Furthermore, obligations are often executed in circumstances which afford the debtor no alternative except to agree to the terms imposed by the creditor.

All these considerations are well known, and, manifestly, were in the legislative mind when the qualifying word "reasonable" was employed.

■ The statute, therefore, contemplates that the creditor's attorney be paid the reasonable value of the service rendered by him; and when there is no service, or need for service, it would be unjust and oppressive to burden the debtor with a counsel fee. See *Moore's Appeal (Moore v. Kilgore)*, 110 *Pa.* 433, 1 *A.* 593.

■ Usually, in the absence of equitable considerations, agreements of parties will be upheld although they may have been improvidently made, but agreements such as these must be understood in the light of the public policy declared by the legislature. The statute is not entirely to subserve the interests of the creditor, or his attorney. It is not entirely blind to the interests of the debtor and other creditors of the debtor. The construction contended for would lead directly to injustice and oppression.

Not only was the legislature careful to establish a maximum counsel fee of five per centum, but it was also careful to declare that counsel fees generally must be reasonable. The purpose is clearly indicated, in case of dispute, to leave the amount of the fee to be determined by a standard outside of the minds of the contracting parties, according to the

judgment of the court upon the facts and in the circumstances proved.

This principle of construction is readily applied in contracts where the word "reasonable," or like expression, is used, *Worthington v. Beeman (C. C. A.)*, 91 *F.* 232; and it is especially applicable in the construction of a statute, containing the same expression, where interests other than those of the contracting parties may be affected.

*Prima facie*, the counsel fee agreed upon by the parties to an obligation will be regarded as reasonable, but subject, nevertheless, to the control of the court which, upon proper objection and showing, will permit only the payment of a reasonable sum measured by the facts and circumstances.

It is impossible to lay down a general rule. Each case must be decided upon its facts. Generally the discretion of attorneys will save the necessity for interposition by the court; but where, in a proper case, the court is called upon to determine the reasonableness of a fee as may be provided for in an obligation, its action must be controlled by the service rendered, the necessity for that service, and the time, labor and responsibility bestowed and assumed.

The following authorities support the reasoning upon which this conclusion is based: *McCornick v. Swem,* 36 *Utah* 6, 102 *P.* 626, 20 *Ann. Cas.* 1368; *Wilson Sewing-Machine Co. v. Moreno (C. C.),* 7 *F.* 806; *Bank of Commerce v. Fuqua,* 11 *Mont.* 285, 28 *P.* 291, 14 *L. R. A.* 588, 28 *Am. St. Rep.* 461; *Campbell v. Goddard,* 117 *Ill.* 251, 7 *N. E.* 640; *Weigley v. Matson,* 125 *Ill.* 64, 16 *N. E.* 881, 8 *Am. St. Rep.* 335; *Exchange Bank of Dallas v. Tuttle,* 5 *N. M.* 427, 23 *P.* 241, 7 *L. R. A.* 445; *Reeves v. Estes,* 124 *Ala.* 303, 26 *S.* 935; *Bowie v. Hall,* 69 *Md.* 433, 16 *A.* 64, 1 *L. R. A.* 546, 9 *Am. St. Rep.* 433; *Johnson v. Phillips,* 143 *Md.* 16, 122 *A.* 7;

*Pirie v. Stern,* 97 *Wis.* 150, 72 *N. W.* 370, 65 *Am. St. Rep.* 103; *Hulse v. Mershon,* 125 *Ill.* 52, 17 *N. E.* 50; *Falls v. U. S. Savings, etc., Co.,* 97 *Ala.* 417, 13 *So.* 25, 24 *L. R. A.* 174, 38 *Am. St. Rep.* 194; 1 *Black on Judgments,* § 75.

In the instant case, it is doubtful whether any action by counsel for the Baker judgment was necessary. An execution had been issued on the first judgment which would have resulted, as it did result, in the sale of the defendant's property, in the application of the fund to the judgments in their order, and the consequent payment of the Baker judgment. There is no suggestion that the first judgment creditor was seeking to delay a sale.

We have before us the statement of counsel for the Baker judgment that at the time he issued his execution he was ignorant of the prior execution, as well as his statement that he attended the sale of the property on his client's behalf. Those statements may not be entirely ignored, although it is to be said that a few minutes spent in the examination of the records would have disclosed the existing execution.

In the circumstances, a fee of $50.00 is reasonable recompense for the service rendered.

It is, therefore, ordered, that the sum of $50.00 be deducted from the fund and paid to Andrew J. Lynch, Esquire, for his services in connection with the Baker judgment, and that the balance of said fund amounting to $609.71 be paid to The Peoples National Bank of Laurel, or to its attorney, in part payment of its judgment against R. E. Beers Lumber Co., being No. 143 to June Term, 1932.