**J. R. COLDIRON, t/a Coldiron Drywall Construction Co., Plaintiff,**

**v.**

**Donald S. GASTER et al., Defendants.**

Superior Court of Delaware, New Castle.

May 13, 1971.

Harold Leshem, Wilmington, for plaintiff.

William F. Lynch, II, Wilmington, for defendants.

## OPINION

MESSICK, Judge.

Donald S. Gaster is the general contractor and a lessee of the Cliff House, which is a seven story apartment building located in Brandywine Hundred. On April 28, 1969, he negotiated a sub-contract with John R. Coldiron who does business through the Coldiron Drywall Construction Co. Mr. Coldiron was employed to drywall the structure. Although work began on a harmonious note in May of 1969, Coldiron left the Cliff House on January 12, 1970, because of a pay dispute. He subsequently filed a mechanics' lien against Gaster and his wife who manage Cliff House as tenants in partnership under 6 Del.C. §

1525, and against the John Hancock Mutual Life Insurance Company which owns the premises.[1] The plaintiff also sought a personal judgment against Gaster on the sub-contract.

After a jury trial in June of 1970, the plaintiff recovered $51,788.00 in damages. The defendants move for a new trial, contending that the verdict is excessive, contrary to the evidence, and against the charge of the Court. In addition, 10 Del. C. § 3912, which allows counsel fees to the successful claimant in a mechanics' lien action, is attacked as unconstitutional. Even if the statute is valid, the defendants contend that only the jury should assess counsel fees and not the Court.

■■■■ Courts are reluctant to disturb jury verdicts because of the essential position which they occupy in our judicial system. Burns v. Delaware Coca-Cola Bottling Company, 224 A.2d 255 (Del.Super. Ct., 1966). Every verdict is presumed to be correct. Lacey v. Beck, 2 Storey 526, 161 A.2d 579 (Del.Super.Ct., 1960). However, jury verdicts will be set aside as excessive when the findings contradict undisputed evidence or ignore rules of law. Bennett v. Barber, 7 Terry 132, 79 A.2d 363 (Del. Sup.Ct., 1951); Lacey v. Beck, *supra;* 89 C.J.S. Trial §§ 501, 506. When this situation occurs the Court may grant a new trial or order a *remittitur* of the amount which cannot be sustained by the record. Rudnick v. Jacobs, 9 W.W.Harr. 169, 197 A. 381 (Del.Sup.Ct., 1938). The party against whom a *remittitur* is ordered must either remit the excess or accept a new trial. Rudnick v. Jacobs, *supra;* 39 Am. Jur. New Trial §§ 140, 210.

■■■ Here, the sum of $10,200.00 must be remitted or a new trial granted. The contract between the parties provided that Coldiron would drywall the Cliff House and supply the materials necessary for the task at a price of $129,000.00. An initial payment of $32,000.00 was required upon delivery of the supplies.

Thereafter, payments were divided by floors and were further apportioned in accord with the work done on each level. Specifically, plaintiff would receive $13,-700.00 per floor through the sixth story for a total figure of $82,200.00. Of the $13,-700.00, $6,850.00 was due upon installation of the metal studding and the drywall, and $6,850.00 upon "finishing" the work which consisted of spackling and painting the joints and nails. The seventh floor required more work than the first six, and the parties, consequently, set a higher price of $14,800.00 for it. This figure also was payable in two installments of $7,400.00— one due after the hanging of the drywall and the other upon completion of the "finishing".

In summary, the contract price of $129,000.00 represented $32,000.00 for supplies delivered in preparation for the job, $82,200.00 for work through the first six floors, and $14,800.00 for the seventh floor. Every payment, moreover, was subject to a withholding of 5% pending satisfactory completion of the work.

$30,400.00 of the $32,000.00 materials bill was paid, with $1,600.00 withheld, on June 6, 1969. On July 24, 1969, a bill representing work for studding and hanging drywall on the first four floors was prepared in the amount of $27,400.00. Defendants paid $26,030.00 and retained $1,370.00. On October 8, 1969, a bill in the amount of $20,-550.00 was presented for "finishing" work on the first three floors. $19,522.00 was paid, with $1,028.00 held back. The next two bills dated November 29, 1969 and January 8, 1970, were not paid. The November billing charged defendants for "finishing" the fourth and fifth floors and for "rocking" (hanging the drywall) the fifth and sixth floors in the amount of $27,400.00. The January bill was submit-

---

1. Under 25 Del.C. § 2702, the owner of the premises must authorize the mechanic's work before the fee interest is subject to the lien. This issue has not been raised.

ted for "finishing" the sixth floor and "rocking" the seventh floor, and totaled $14,250.00.

Plaintiff also presented bills for materials left on the job valued at $4,000.00, and for extra work in the sum of $2,140.00. Defendants were billed $127,740.00 and paid $75,952.00. Plaintiff asked for and received the difference of $51,788.00 between these two figures at trial.

An analysis of the bills demonstrates that plaintiff recovered on the basis that all work at the Cliff House was completed except the "finishing" on the seventh floor. However, plaintiff admits or does not deny that certain things were not done properly or were incomplete. For example, more drywall had to be hung on the seventh floor although defendants were charged $7,400.00 for completed drywall work in the January bill. Plaintiff's testimony estimated that about ¾ of $5,000.00, or $3,750.00, would be the labor cost alone of hanging the rest of the drywall. Clearly, the defendants have been overcharged on this item. Furthermore, plaintiff's admissions and uncontradicted testimony establish that five bathrooms have to be corrected at a cost between $1,250.00 and $1,500.00. Although the sixth floor was "99%" complete, an additional expenditure of $150.00 is necessary. A further $1,000.00 had to be spent to complete work in the lobby. The overcharge for these items comes to $6,400.00.

Plaintiff also recovered $4,000.00 for materials left on the seventh floor. However, the sub-contract required plaintiff to provide these supplies as part of the contract price of $129,000.00. The agreement states that "The Subcontractor agrees to furnish all material and to perform all work * * * Contractor agrees to pay the Subcontractor for the performance of said work and furnishing of said materials in accordance with the terms hereof for the sum of One Hundred Twenty Nine Thousand Dollars ($129,000.00) in accordance with the following schedule, subject to such additions and changes as may be agreed on * * *" The price schedule states that the $32,000.00 payment was due "when drywall is loaded on all seven floors." The contract can only be interpreted to mean that drywall materials which were not paid for by the $32,000.00 would have to be provided for by the stage payments, because the total contract price included the furnishing of all the drywall supplies contemplated by the agreement. No evidence is presented which shows that the $4,000.00 charge was an extra amount agreed upon by the parties during the performance of the contract. Since plaintiff's testimony estimates that $3,800.00 of the $4,000.00 figure represented drywall materials ($3,500.00 for "sheetrock" or drywall, and $300.00 for metal framing), the defendants are entitled to a credit of that sum.

The total overcharge amounts to $10,200.00. Defendants asked for damages for alleged defects in the caulking and insulation of the Cliff House as well as for deviation from specifications concerning room and wall dimensions. Since these matters were disputed, the Court may not disturb the jury's resolution of the conflicting testimony. Haas v. Jones, 8 Terry 415, 93 A.2d 915 (Del.Super.Ct., 1953). However, a *remittitur* of $10,200.00 will be ordered or a new trial granted in the alternative because undisputed and admitted evidence demonstrates that the defendants have been improperly overcharged in this amount.

Defendants also contend that 10 Del.C. § 3912, which awards attorney's fees to the successful claimant in mechanics' lien cases but not to the victorious defendant, violates due process and equal protection of the laws and, therefore, that the plaintiff cannot recover this litigation expense.

10 Del.C. § 3912 reads as follows:

"In all causes of action, suits, matters or proceedings brought for the enforcement of any note, bond, mechanics lien, mortgage or other instrument of writing, if

the plaintiff or lien holder in the action, suit or proceeding recovers judgment in any sum, he may also recover reasonable counsel fees, which shall be entered as a part of the judgment in the action, suit or proceeding. Such counsel fees shall not in any such action, suit or proceeding, exceed five per cent of the amount adjudged for principal and interest. Such counsel fees shall not be entered as a part of such judgment unless the note, bond, mortgage, or other instrument of writing sued upon, by the terms thereof, expressly provides for the payment and allowance thereof, except in the cases of mechanics liens in which no express agreement shall be necessary in order to entitle the lien holder to his reasonable counsel fees."

■ Due process and equal protection of the laws require a reasonable legislative basis to validate a classification between similarly situated individuals. Betts v. Zeller, 263 A.2d 290 (Del.Sup.Ct., 1970). The distinction between persons must be relevant to the purpose for which the classification is made. Mills v. State, 256 A.2d 752 (Del.Sup.Ct., 1969). The General Assembly has wide discretion in matters of classification, and its judgment will not be disturbed unless the act is clearly arbitrary. Aetna Casualty & Surety Company v. Smith, 36 Del.Ch. 391, 131 A.2d 168 (Del. Sup.Ct., 1957). If there is a reasonable foundation to support the distinction the Court will not question the wisdom of the legislation. State v. Robinson, 251 A.2d 552 (Del.Sup.Ct., 1969). The constitutionality of every statute and the reasonableness of classifications is presumed. Conard v. State, 2 Terry 107, 16 A.2d 121 (Del.Super.Ct., 1940).

■ The fact that attorney's fees are granted to successful plaintiffs but not to winning defendants does not raise a due process or equal protection problem if the classification is reasonable in other respects. McMullen v. Doughty, 68 N.J.Eq. 776, 55 A. 115, 284, 64 A. 1134 (1903); 20 Am.Jur.2d Costs § 80. The positions of plaintiff and defendant in a lawsuit are sufficiently dissimilar to justify differences in treatment. Missouri, Kansas & Texas Ry. Co. of Texas v. Cade, 233 U.S. 642, 34 S.Ct. 678, 58 L.Ed. 1135 (1913). In the last cited opinion the Court noted that *"Actor* and *Reus* differ in their respective attitudes towards a litigation; the former has the burden of seeking the proper jurisdiction and bringing the proper parties before it, as well as the burden of proof upon the main issues; and these differences may be made the basis of distinctive treatment respecting the allowance of an attorneys' fee as a part of the costs."

■ An unsuccessful debtor in a mechanics' lien situation can reasonably be treated differently than other defendants who are not liable for attorney's fees.[2] Mechanics' liens were first created by statute to secure payment for work performed

---

2. The constitutional problems associated with mechanics' lien statutes which award attorney's fees only to the successful claimant have been the subject of much litigation. For those decisions upholding such statutes see: Thompson v. Wise Boy Min. & Mill. Co. et al., 9 Idaho 363, 74 P. 958 (1903); Baldridge v. Morgan et al., 15 N.M. 249, 106 P. 342 (1910); Lindquist v. Young et al., 119 Minn. 219, 138 N.W. 28 (1912); Behrens v. Kruse et al., 121 Minn. 90, 140 N.W. 339 (1913); Harrington v. McCarthy, 91 Idaho 307, 420 P.2d 790 (1966). See also Cameron v. Chicago, M. & St. P. Ry. Co., 63 Minn. 384, 65 N.W. 652 (1896); Alexander v. Chicago,

M. & St. P. Ry. Co., 282 Mo. 236, 221 S.W. 712 (1920); United States for Use and Benefit of Chevron Asphalt Co. v. Maryland Casualty Company, 316 F. Supp. 750 (E.D.Cal., 1970).

For cases reaching an opposite result see: Union Terminal Co., et al. v. Turner Const. Co., 247 F. 727 (5th Cir.—1918). Davidson et al. v. Jennings et al., 27 Colo. 187, 60 P. 354 (1900); Builders' Supply Depot et al. v. O'Connor et al., 150 Cal. 265, 88 P. 982 (1907); Becker et al. v. Hopper et al., 22 Wyo. 237, 138 P. 179 (1914); Monarch Lumber Company v. Wallace, 132 Mont. 163, 314 P.2d 884 (1957).

in the "erection, alteration, or repair of any structure, in pursuance of any contract, express or implied, with the owners of such structure, or with the agent of such owner * * *." 25 Del.C. § 2702.[3] The classification of defendants against whom a mechanics' lien can be asserted is reasonable. 53 Am.Jur.2d Mechanics' Liens § 10; 57 C.J.S. Mechanics' Liens § 3. Since a judgment entered pursuant to a lien is constitutional, then attorney's fees, which are incidents of the judgment lien, are also valid. 10 Del.C. § 3912.

■ In addition, the legislature has ample reason to discriminate between mechanics' lien defendants and other debtors. The award of attorney's fees effectuates one purpose of the mechanics' lien law, which is to prevent unjust enrichment by those who benefit from labor without paying for it. Girdler Corporation v. Delaware Compressed Gas Co., 7 W.W.Harr. 344, 183 A. 480 (Del.Super.Ct., 1936). The General Assembly may conclude that the lien would be of little value to the mechanic if his recovery is reduced by counsel fees. This judgment is supported by the consideration that the mechanic's livelihood depends on his wages and that he is effectively out of work for the time which he is not paid.

■ Similarly, the legislature may determine that a defendant who unreasonably resists payment of a just demand and thereby forces the lienor to incur attorney expenses should bear the burden of that cost. Petitions of Warrington et al., 7 W.W.Harr. 19, 179 A. 505 (Del.Super.Ct., 1935); Missouri, Kansas & Texas Ry. Co. v. Cade, *supra*. The statute merely includes attorney's fees among the court costs which the successful claimant would normally recover. There is no constitutional impediment.

■ Defendants' final contention that the amount of the fee should be determined by the jury is not meritorious because 10 Del.C. § 3912 contemplates that the Court will make that calculation. The statute reads that reasonable counsel fees "shall be entered as a part of the judgment in the action, suit or proceeding" and that the fees shall not exceed "five per cent of the amount adjudged for principal and interest." A "judgment" by definition is the judge's determination of the case upon the jury's verdict. 46 Am.Jur.2d Judgments § 4. The two quoted sections show that attorney's fees are determined by the Court after the return of the verdict by the jury.

Furthermore, the decision in *Petitions of Warrington, supra,* held that the reasonableness of fees provided for by a statutory predecessor of 10 Del.C. § 3912 was "subject, nevertheless, to the control of the court" and the amount of the fee determined "according to the judgment of the court." See Rev.Code 1915 § 4204. The statute considered in that case had substantially the same language as 10 Del.C. § 3912 but did not authorize the recovery of reasonable attorney's fees where the parties did not agree to it. If a contractor agreed to pay reasonable counsel fees to a sub-contractor in a mechanics' lien situation arising under *Petitions of Warrington, supra,* the Court would have decided the reasonableness and the amount of the fee. There should be no functional difference in the manner of the calculation in the absence of party agreement.

In general, Delaware case law supports this result. The opinions in Great American Indemnity Co. v. State, 32 Del.Ch. 562, 88 A.2d 426 (Del.Sup.Ct., 1952) and Wilmington Trust Company v. Coulter, 208 A. 2d 677 (Del.Ch.1965) suggest that the award of attorney's fees allowed by statute is treated as an item of court costs which are within the province of the trial judge.

3. The provisions of 10 Del.C. § 3912 in question will be considered in reference to 25 Del.C. § 2701 et seq., because the two enactments are in *pari materia* for purposes of this case. See State for Use of Davis v. Adams, 3 Terry 54, 27 A.2d 401 (Del.Super.Ct., 1942).

Defendants' motion for a new trial, therefore, is conditionally denied upon a *remittitur* of $10,200.00. If plaintiff does not accept a remittance of this sum a new trial will be granted.[4] 10 Del.C. § 3912, which authorizes the recovery of reasonable attorney's fees not to exceed 5% of the principal and interest, is constitutional, and the amount is determined by the Court. If the *remittitur* is accepted, plaintiff is entitled to have a reasonable counsel fee of 5% added on to his recovery.

Order on notice.

4. Where the issue of liability is distinct from that of the question of damages, this Court may order a new trial limited to a reconsideration of the damages under Civil Rule 59(c). Burns v. Delaware Coca-Cola Bottling Company, *supra*. Here, however, a complete new trial is ordered because the basis of plaintiff's complaint is the value of his labor and services which the defendants dispute.