THE FOURTH NATIONAL BANK OF CINCINNATI *v.* MAYER.

Where an attachment is sued out and garnishment issued thereon, if the plaintiff fail to recover, the defendant may, in an action upon the attachment bond, recover as damages reasonable attorneys' fees expended in defense of the attachment proceedings, interest upon money held up by garnishment pending the attachment, and as well such other reasonable and necessary expenses as may be incurred by him in the vindication of his rights.

May 13, 1895. Brought forward from the last term.

Action for damages. Before Judge GRIGGS. Dougherty superior court. April term, 1894.

Laidley & Co., of Cincinnati, O., sold a load of meat to Ragan, of Albany, Ga., and drew upon him for the price of the same, attaching to the draft the bill of lading, and depositing the same to their credit in the Fourth National Bank of Cincinnati. This bank forwarded the same to the First National Bank of Albany for collection. It was paid by Mayer who had bought the meat from Ragan. Having thus obtained the bill of lading, Mayer received the meat from the carrier, and upon examining it, found that it was damaged; whereupon he sued out an attachment against both Laidley & Co. and the Fourth National Bank, and caused garnishment to issue and be served on the First National Bank. He failed to recover as to the Fourth National Bank (see 89 *Ga.* 108). This bank subsequently brought its action against him upon the bond given by him in suing out the attachment, the condition of which was, that he should pay all damages that the defendants might sustain and all costs that might be incurred by them in consequence of suing out the attachment, in the event he should fail to recover. Upon the trial it appeared that the bank paid its attorney $75 for representing it in the attachment and garnishment proceeding, that this was a reasonable fee, and that the garnishee held up $500, the money of said bank, without paying interest, from April 18, 1890, to October 11, 1892. There was testimony for Mayer, that the attachment was originally sued out against Laidley & Co. only, and the garnishment was served in that way; that he had no claim on the Cincinnati bank; that its name was put into the papers by his attorney at the request or suggestion of the garnishee, so that it would clearly show that the garnishee had to hold up the money, the garnishee assuring the attorney that this would do no harm and that nothing would ever come of it, etc. The judge, to whom the case was submitted without a jury, decided that the plaintiff was not entitled to recover.

W. T. JONES, for plaintiff.

D. H. POPE & SON, for defendant.

ATKINSON, Justice.

According to the rules of the common law, and according to the adjudications of this court as well (see *Sledge* v. *McLaren*, 29 *Ga.* 64, and *Wilcox* v. *McKenzie*, 75 *Ga.* 73, and cases cited in the opinion of the court pronounced in the latter case), an action on the case for the recovery of general damages resulting from the suing out and levy of an attachment proceeding by garnishment or otherwise, cannot be maintained unless it be alleged in the declaration and proven on the trial that the proceeding was instituted both with malice and without probable cause. These are the concurring conditions essential to the maintenance of that action. But under our code, §3266, neither of these conditions is essential to the maintenance of an action upon a statutory bond given to indemnify the defendant in the attachment case against damages sustained by him in consequence of the wrongful suing out of the attachment.

In the present case the suit is upon a bond given under the section of the code indicated, and the declaration, as amended, alleged the execution of the bond and its breach by the defendant. Under the judiciary act of 1799, it was necessary, before the defendant in an attachment suit could sue on the bond filed by the plaintiff and recover a judgment against him and the securities, that he ascertain, by the recovery of a judgment against the plaintiff the amount of damages to which he was entitled. See *Sledge* v. *Lee*, 19 *Ga.* 411. According to that act, which was of force prior to the adoption of the present existing law, the obligors in a bond executed to authorize the issuing of an attachment and garnishment, were bound to pay "all costs which may be *recovered* by the defendant in case the plaintiff suing out such attachment shall discontinue or be cast

in the suit, and also all damages which may be *recovered* against the plaintiff for suing out the same." It will be seen, that according to the very terms and conditions of this bond, before there could be a breach thereof, there must have been a *recovery* by the obligee in the bond and an ascertainment of his damages against the plaintiff in attachment, before a suit could be maintained upon the bond. This preliminary action was necessarily a condition precedent to the institution of a suit upon the bond, because as the bond stipulated only for the payment of such sums as were recovered by the defendant, there could be no breach of the bond upon the part of the obligors until a refusal to pay the damages actually ascertained by the judgment of a court.

Counsel for the plaintiff in error cited and pressed upon us, with great confidence, the decision of this court in the case of *Sledge* v. *McLaren, supra,* as controlling the question made in the present case; and but for his earnestness in that contention, emphasized upon an application for rehearing, which latter was denied, we would not deem it necessary to refer to it. It will be observed, upon an examination of that case, that it was an action on the case for general damages, in which it was sought to recover, without proof that the attachment was sued out with malice and without probable cause. The distinction between the two is this: The present case is an action for a breach of covenant as expressed in the bond. That was an action on the case for damages inflicted by the wrongful act of the plaintiff, and wholly independent of the covenant expressed in the bond. According to the learned justice delivering the opinion of the court in that case, it was insisted, upon argument before the court, that so much of the rule of the common law as required proof of malice and the absence of probable cause to maintain an action on the case for damages, was repealed by the attachment

act of 1799, or rather by that part of the act of 1799 providing that the magistrate issuing the attachment "shall take bond and security of the party for whom the same may be granted, in double the sum to be attached, payable to the defendant, for satisfying and paying all costs which may be incurred by the defendant in case the plaintiff suing out such attachment shall discontinue or be cast in said suit, *and also all damages which may be recovered against said plaintiff for suing out the same."* The court took the contrary view, however, and ruled that the effect of the passage of the act of 1799 was not to repeal the common law rule of liability as above stated; but that the bond required by that act being given to the defendant as security for his damages, in order to ascertain his damages he must first bring his common law action, because without such an action there could be no damages recovered; and unless there was a non-payment of damages actually recovered, there could be no breach of the bond.

The law now of force, incorporated in section 3266 of the code, was not considered by the court in the adjudication of the case above referred to, and for the obvious reason that its provisions relate to damages recoverable in an action different from the one then under review. The proposition that the defendant in an attachment suit must first recover in an action on the case before he could recover in an action on the bond, had been previously decided by this court in the case of *Sledge* v. *Lee*, 19 *Ga.* 411, *supra*, and at the conclusion of his opinion upon that subject in the case last mentioned, Mr. Justice LUMPKIN, speaking for the court, recommends remedial legislation. The judgment in that case was rendered on the 18th day of February, 1856. A reference to the journals of the house will show that the General Assembly was then in session and had under discussion a general law authorizing and regulating the suing out of

garnishments and attachments. On the 25th day of February, 1856, the General Assembly finally passed and transmitted for the approval of the governor, and he, on the 4th day of March of that year, approved the act a portion of which is codified in section 3266 of the code. We gather from this state of facts, that the General Assembly, acting upon the suggestion of this court, passed this act to remedy the evil existing under the act of 1799. For by the act of 1856 a radical change was made in the condition of a bond required of a plaintiff seeking an attachment. By that act a plaintiff in attachment was required to give a bond, not to pay to the defendant such damages as he may *recover*, as was required by the act of 1799, but to pay to him such damages as he may *sustain*, and all costs that may be *incurred* by him in consequence of suing out the attachment, in the event the plaintiff fail to recover. Thus it will be seen that under the act of 1799, before the defendant in attachment could recover upon his bond, his damages must have been ascertained by a *recovery* against the plaintiff in attachment. By the act of 1856, his right to recover upon the bond accrued when he had *sustained* damages. Under the old law, he might have sustained serious damage and been wholly unable to recover, because of the good faith of the plaintiff in suing out his attachment; but under the new law, if he *sustain* damage and the plaintiff fail to recover, the defendant could, in a suit upon the bond, recover such damage, without reference to the question of good faith or the absence of probable cause upon the part of the plaintiff. In the former case, the bondsmen guarantee the damage *recovered*. In the latter case, they undertake to reimburse the defendant for damages *sustained*. In the former case, according to the condition of the bond, they undertake to indemnify him against ultimate loss in the event he *recover* in his action upon the case. In the latter case,

by their covenant they undertake to guarantee, to the extent of a sum double the amount of the plaintiff's debt, that the plaintiff in attachment has a good cause of action and will prosecute it to a successful termination.   Under the new law, if the defendant sustain damage, the only means by which the principal and his sureties can relieve themselves from liability upon the bond is by showing that the plaintiff in attachment had recovered.   Under the old law, they only became liable in the event the plaintiff failed in his suit and the defendant *recovered* damages against him.   The evident object designed to be accomplished by the change in the law as above indicated, was to enable the defendant in attachment to recover upon the covenant of the plaintiff's bond those damages which he might *sustain* in consequence of the suing out of the attachment, but which he could not, without great difficulty, recover in an action on the case, because of the common law rule above stated.   The actual change accomplished was not a modification of the rule of evidence applicable to actions on the case founded upon the unlawful suing out of an attachment, but such a change in the conditions of the bond as rendered the common law rules above referred to inapplicable to actions upon the bond for the recovery of the penalty thereof.

These considerations lead us to the conclusion, that where a bond is executed under section 3266 of the code, no preliminary recovery is necessary to the maintenance of an action upon such a bond for the recovery of the damages *sustained* or costs *incurred* by the obligee in the bond in consequence of the suing out of the attachment. According to the terms of the bond itself, the only condition precedent to a recovery thereon is that the plaintiff, the obligor in the bond, should have failed in his suit.   If he fail to maintain his action, and fail to pay the damages *sustained* and the costs *incurred*, the breach

of his bond is complete, and he instantly becomes liable upon its covenant for all damages which the obligee may *sustain*, and all costs that he may have *incurred* in consequence of suing out the attachment. Within the penalty of the bond, the defendant may recover any damages actually *sustained* by him and any costs actually *incurred* by him, without reference to the good faith of the plaintiff in suing out the attachment. An action to recover damages for the wrongful suing out of an attachment, and an action to recover damages sustained in consequence of such an act, are essentially different. The one is broad enough to include both penal and compensatory damages. The other cannot be extended beyond the allowance of compensatory damages only. Under the former, the plaintiff could recover not only his actual damages, but such other penalty as might be awarded to him in the nature of exemplary damages; while in the latter, exemplary damages could not be allowed, but only such as were actually sustained, or such as, though in a certain sense consequential, were sufficiently proximate in their nature to be the basis of a recovery. In the latter case, compensatory damages only would be recoverable. In the former, both exemplary and compensatory damages may be allowed. It will be seen, by reference to the conditions of the several bonds, that in a suit upon a bond executed under the act of 1799, after judgment against the principal, the defendant in an attachment suit could recover upon the bond not only actual but also exemplary damages; whereas, under the bond now required by section 3266 of the code, the recovery of the defendant in attachment is confined to compensatory damages only. If therefore, in addition to the actual damages sustained in consequence of the suing out of an attachment, the defendant seek to recover exemplary damages against the plaintiff for his wrongful act, he cannot, upon the attachment bond,

maintain an action therefor, but for such damages he is remitted to his common law action on the case against the plaintiff alone for the wrongful suing out of the attachment, and must prove, in order to recover such damages, both malice and the want of probable cause on the part of the plaintiff.

In the present case, the defendant sued out an attachment, caused it to be levied by garnishment upon certain money of the plaintiff, and failed ultimately to recover. This constitutes a breach of the bond and authorizes a judgment, within the penalty of the bond, against the defendant and his sureties for all damages which the plaintiff *sustained* and all costs which were *incurred* by him in consequence of the suing out of the attachment. Such damages would necessarily include interest upon money held up by the garnishment proceeding pending the attachment. They would include reasonable attorneys' fees necessarily expended by the defendant in the defense of the attachment proceeding, and as well such other reasonable and necessary expenses incident to the litigation as might be incurred by him in the vindication of his rights. We think, upon the evidence as it appears in the record, the plaintiff was entitled to recover. The amount of his recovery we do not undertake to indicate.

Let the judgment of the court below be     *Reversed.*