# HAYES, RESPONDENT, v. UNION MERCANTILE COMPANY ET AL., APPELLANTS.

(No. 1,432.)

(Submitted March 11, 1902.   Decided December 15, 1902.)

*Appeal — Notice — Undertaking — Conformity — Service— Acknowledgment by Attorney — Malicious Attachment — Damage to Credit—Publication — Pleading—Admissibility of Evidence—Settlement—Instructions.*

1. A notice of appeal recited that the defendants "each hereby appeals." The undertaking, after reciting that the defendants were about to appeal, added that in consideration of such appeal the sureties bound themselves to pay damages and costs awarded against appellants, or either of them, on "the appeal." *Held,* that the undertaking would warrant a recovery on a determination of the appeal adverse to both defendants, and was not the undertaking of one defendant, merely.

2. Code of Civil Procedure, Section 1740, provides that no appeal can be dismissed for insufficiency of the undertaking if a proper undertaking is filed before the hearing of the motion to dismiss. *Held,* that an objection to an undertaking as only a joint one is not available where, before the hearing of the motion to dismiss, each appellant has filed a due and proper undertaking.

3. Where a judgment is rendered against two of three defendant co-tortfeasors, counsel for the three cannot acknowledge service for the third of the notice of appeal by the defeated two, as the third is adversely interested to escape contribution.

4. Where a defendant who recovers judgment has no counsel of record, except such as represents codefendants against whom judgment is rendered, and which counsel is therefore incompetent to acknowledge service, on behalf of the successful defendant, of the notice of appeal by the defendants charged, service of such notice on the successful defendant by mailing a copy to his postoffice address is sufficient.

5. In an action for damages from a wrongful and malicious attachment of plaintiff's goods, where injury to his credit is alleged, evidence of the amount of his business, his profits and credit, and the effect of the attachment upon the latter is admissible.

6. Assignments of error not designated in the argument will not be considered.

7. The supreme court will not notice an argument as to an instruction refused, where no assignment refers to that instruction.

8. It is not error to refuse an instruction requested, where the same is covered by an instruction given.

9. Injury to plaintiff's credit being relied on, evidence that the news of the attachment was published by a mercantile agency is properly admitted in proof of such injury, though the defendants are not shown to have been directly responsible for the publication.

10. Under the allegation that the levying of the attachment injured plaintiff's business and credit, the evidence of such publication is admissible without being more specifically pleaded.

11. In an action for wrongful attachment, defendants having pleaded that, when the claim was settled and the attachment vacated, the plaintiff released them from all liability, evidence of such release should have been admitted, though the complaint showed that the attachment was vastly in excess of the amount due, so as to suggest duress.

12. In an action for wrongful attachment, an instruction that for a wrongful levy "any damages" resulting to the attachment defendant during the wrongful detention of property may be recovered is properly refused, as too broad.

13. Where, by uniform practice, existing through years, it is mutually understood that the debtor is to have until a certain day of the succeeding month in which to pay for goods purchased during the current month, he is entitled to such time, though no express agreement has ever been made.

*Appeal from District Court, Lewis and Clarke County; S. H. McIntire, Judge.*

ACTION for wrongful attachment by Jerome D. Hayes against the Union Mercantile Company, Theodore Fuhrken, and Louis Hillebrecht. From a judgment against defendants Union Mercantile Company and Hillebrecht, they appeal. Reversed.

*Messrs. Walsh & Newman, and Messrs. Carpenter & Carpenter,* for Appellants.

Loss of credit through an attachment is too remote to be considered. (*Lowenstein* v. *Monroe,* 7 N. W. 406, 55 Ia. 82; *Campbell* v. *Chamberlain,* 10 Ia. 337; *Mitchell* v. *Harcourt,* 17 N. W. 581, 62 Ia. 349; *Anderson* v. *Sloan,* 72 Wis. 566, 40 N. W. 214; *Cunningham* v. *Sugar,* 49 Pac. 910; *Crymble* v. *Mulvaney* (Colo.), 40 Pac. 499; *Seattle Crockery Co.* v. *Haley,* 33 Pac. 650.)

It is not alleged or proven, nor did respondent attempt to prove that appellants published, or caused to be published through papers, reports, agencies, or through other means, the fact that an attachment had been issued against the respondent. When not pleaded it was not admissible. If pleaded it would not be admissible unless shown that the appellants published, caused it to be published, or were in some way connected with, or responsible for its publication. (*Maskell* v. *Barker,* 99 Cal. 642, 34 Pac. 340; *Tynberg* v. *Cohn,* 24 S. W. 314; *Jameson* v. *Weaver,* 81 Ia. 212, 46 N. W. 996.)

The question of duress is not a question of law for the court;

it is a question of fact for the jury to say from all the circumstances in the case whether or not a party acted under duress. (*Galusha* v. *Sherman*, 47 L. R. A. 417.)

Evidence of duress cannot be introduced under a general denial, but must be specially pleaded. (*Nordholt* v. *Nordholt*, 87 Cal. 552, 26 Pac. 599.)

If the contract was made, even though made under duress, it was not void but voidable. (Civil Code, Sec. 2111; *Rossiter* v. *Loeber,* 18 Mont. 372; Clark on Contracts, p. 363; Am. & Eng. Enc. Law, Vol. 10, 2d Ed. 334; *Deputy* v. *Stapleford,* 19 Cal. 302; Clark on Contracts, 361; *State* v. *McCauley,* 15 Cal. 429.)

A person who settles a suit should not be permitted to afterwards bring an action on the ground that the suit settled was commenced without probable cause. There is a long line of authorities supporting this proposition, of which we cite only a few. (*Sartwell* v. *Parker,* 141 Mass. 405, 5 N. E. 807; *Hillard* v. *Regan,* 46 Ill. App. 313; *Roseberg* v. *Hart,* 33 Ill. App. 262; *Emery* v. *Genran,* 24 Ill. App. 65; *Thompson* v. *Gatlen,* 58 Fed. 534; *Rachilman* v. *Skinner,* 48 N. W. 776.)

When an action is commenced in good faith and there is no malice, an action for malicious prosecution cannot be maintained. (*Gonzales* v. *Cobliner,* 8 Pac. 697, and notes; *Stewart* v. *Sonneborn,* 98 U. S. 192.)

Where the facts are undisputed the want of probable cause is a question for the court, but where the facts are disputed the question is for the jury under proper instructions from the court as to what will constitute want of probable cause. (*Gurley* v. *Thompkins,* 30 Pac. 345; *Mosley* v. *Yearwood,* 19 S. 274.)

*Mr. R. R. Purcell,* and *Mr. T. J. Walsh,* for Respondent.

Loss of credit is an element of damages not too remote to be considered in actions for wrongful attachment. (Shinn on Attachment, 379; Waples on Attachment, 1010; Drake on Attachment (3d Ed.), 745; *Kennedy* v. *Meacham,* 18 Fed. 312; *Lewis* v. *Taylor,* 34 S. W. 92; *Tynberg* v. *Cohen,* 24 S. W. 314; *Donnell* v. *Jones,* 48 Am. Dec. 59-71; *O'Grady* v. *Julian,* 34

Ala. 88; *Meyer* v. *Fagan,* 51 N. W. 753; *Burton* v. *Knapp,* 87 Am. Dec. 479; *Mayer* v. *Duke,* 72 Tex. 445-453; *Flournoy* v. *Lyon,* 70 Ala. 308; *Doll* v. *Cooper,* 9 Lea, 576-586; *Lawrence* v. *Hagerman,* 56 Ill. 68.)

Evidence of the publication of the attachment was admissible. (*Brand* v. *Hinchman,* 36 N. W. 664-669.)

MR. JUSTICE MILBURN delivered the opinion of the court.

This cause comes before us on appeal from the order denying a motion for a new trial and from the judgment.

The respondent has interposed a motion to dismiss the appeal. The action was prosecuted by the plaintiff against the three defendants named, to recover for tort. The verdict was against all three of the defendants for $3,000. Judgment was taken and entered against the Union Mercantile Company and Louis Hillebrecht only, the court holding Fuhrken not liable. Two notices of intention to move for a new trial were served and filed,—one jointly by the Union Mercantile Company and Hillebrecht, and another by Fuhrken. They all, however, filed a single motion in writing for a new trial. This motion was overruled on condition that the plaintiff abate all except $1,000 of the sum awarded by the jury. This he did. The Union Mercantile Company and Hillebrecht appealed. Fuhrken, of course, did not.

The notice of appeal, addressed to the proper parties, is as follows: "You, and each of you, will please take notice that the defendants Union Mercantile Company and Louis Hillebrecht each hereby appeals to the supreme court of the state of Montana from the judgment made, given and entered in the above entitled cause on the 30th day of November, 1898, in favor of plaintiff, and against the defendants Union Mercantile Company and Louis Hillebrecht, and each of them, and modified by order of court made on the 15th day of April, 1899, and the stipulation or waiver filed by the plaintiff on the 25th day of April, 1899, and from the whole and every part of said judg-

ment. And you, and each of you, will further take notice that the defendants Union Mercantile Company and Louis Hillebrecht each hereby appeals to the supreme court of the state of Montana from the order made, given and entered in the above entitled cause on the 25th day of April, 1899, overruling the motion of the defendant Union Mercantile Company and the defendant Louis Hillebrecht for a new trial in said cause, and from the whole and every part of said order."

An undertaking in the sum of $300 was filed, conditioned, after reciting that the Union Mercantile Company and Hillebrecht are about to appeal to the supreme court, as follows: "Now, therefore, in consideration of the premises and of such appeal," etc.; and the sureties promise "that the said appellants will pay all damages and costs which may be awarded against them, or either of them, on *the appeal,* or dismissal thereof."

The motion to dismiss is upon two grounds: (1) That no undertaking on the appeal of the Union Mercantile Company has ever been filed, and the only undertaking on appeal herein is an undertaking reciting a joint appeal by the said Union Mercantile Company and Louis Hillebrecht, which said undertaking is conditioned upon the affirmance or dismissal of said joint appeal; and (2) that the notice of appeal does not appear to have been served upon the defendant Fuhrken, it being assumed that he is an adverse party.

Appellants, before the hearing of the motion to dismiss, each filed a good and sufficient undertaking, approved by the Chief Justice; they depending upon Section 1740 of the Code of Civil Procedure.

Excellent briefs bearing upon this motion have been filed and considered by this court.

As to the first ground of the motion: If damages and costs should be awarded against both of the appellants, and suit should be brought against the sureties on the undertaking, could there be a valid defense on the ground that the undertaking was void? We think not. It may be that the undertaking is insufficient, in that, if damages and costs should be awarded against only one of the appellants, or if the appeal as to one should be dismissed,

suit could not be maintained on the undertaking, for the reason that the sureties did not undertake to respond in such a case, but only in case "the appeal" of the two appellants named in their undertakings should be dismissed, or in case damages and costs should be awarded against them. The undertaking speaks for itself. The sureties, if sued, could not aver and maintain that the Union Mercantile Company and Louis Hillebrecht had not appealed, as they in their undertakings state that they (the Union Mercantile Company and Louis Hillebrecht) were about to do. These parties did appeal, and it would be the very refinement of technicality in the construction of language to hold that the words "on the appeal," used in the undertaking in connection with the word "appellants," mean, and can only mean, the appeal of one of the appellants. The language of the undertaking means that if the Union Mercantile Company and Louis Hillebrecht do appeal, and do not prevail, the sureties will see to it that the appellants pay the costs and damages, or that the sureties will pay them. If the undertaking is insufficient to cover the case of the failure of some one of the two appellants to prevail in its or his appeal,—and this point it is not necessary for us to decide,—then the fact that the appellants have severally filed new undertakings, as above stated, is sufficient to save them from an adverse ruling on the motion to dismiss on the first ground. (*Coleman* v. *Perry*, 24 Mont. 237, 61 Pac. 129, with citations.)

As to the second reason alleged why the appeal as to the Union Mercantile Company should be dismissed: The reason given is that Fuhrken is an adverse party, and no notice of appeal was served upon him. The appellants, the Union Mercantile Company and Louis Hillebrecht, amending the record, by affidavit show service by mailing a copy of the notice of appeal to Fuhrken at his correct postoffice address, and further show that they, the said counsel, on the same day acknowledged service for Fuhrken as counsel for Fuhrken. If Fuhrken be adverse party, because he may be interested in seeing that the judgment be affirmed against the appellants, for that they may be compelled to pay without contribution from him as joint tort feasor,

then counsel for the appellants could not accept service for their adversary, Fuhrken; and it would be proper and right to serve the notice by mail on him, as was done. It does not appear that he had any other counsel of record, or at all. Notice was given to Fuhrken.

The motion to dismiss is denied.

This action was commenced in March, 1898, for wrongfully and maliciously procuring, without probable cause, an attachment to be levied upon plaintiff's goods. It is alleged in the complaint that ever since 1890 the plaintiff has been, and at the time of the alleged grievance was, doing a wholesale and retail business in Lewis and Clarke county; that the defendant Union Mercantile Company was and is a corporation; that on January 4, 1898, the said defendant corporation, by and through the defendants Hillebrecht and Fuhrken, officers thereof, commenced an action in the district court of Lewis and Clarke county against the plaintiff for $2,018.15 and costs, and sued out a writ of attachment; that defendants caused the writ to be executed by levying upon and seizing all of plaintiff's stock, of the value of $15,000, and retaining possession thereof for two days; that no more than $250 was due to the defendant company, although plaintiff admits that he owed the full sum of $2,018.15; that if suit had been brought, and a writ of attachment issued only for what was due, to-wit, $250, the plaintiff could and would have paid that amount and costs, and thus have avoided the attachment; that the defendants maliciously and purposely caused the levy for the amount of $2,018.15 in order to destroy the plaintiff's business and injure him; that plaintiff was doing a prosperous business; and "that, by reason of the wrongful and unlawful acts of the said defendant Union Mercantile Company, plaintiff's trade and credit have been impaired and destroyed, and will be seriously injured for a long period in the future; that he has been financially cramped and distressed, to his damage in the sum of $10,000."

The defendants answered, and denied all the material allegations of the plaintiff, except so far as, further answering, they admitted and averred that the debt of $2,018.15 was due at the

time of the commencement of the suit and of the issuance of the writ of attachment; that, after stating the facts to legal counsel, and being by him advised that they had a good cause of action on the merits, they commenced the action, and the writ was issued and placed in the hands of the sheriff, with instructions to levy upon sufficient property to satisfy the claim and costs; that the sheriff on the said 4th day of January, after the close of the business of the defendant (plaintiff and respondent here), went to his store and told him of his possession of the writ, and was by respondent requested to forbear the removal of any goods, but to take possession, and he would settle; that thereupon the Union Mercantile Company and respondent agreed that the sheriff should not remove any goods from the store, but should remain nominally in possession, and respondent should continue his business without interruption; that immediately the respondent then applied to appellant Union Mercantile Company to settle the said action and all issues; that a full settlement was made in consideration of said appellant accepting certain goods returned, and the guaranty of Bach, Cory & Co., instead of a certain part of the money sued for, and the respondent waived any claim for damages arising out of said suit, and that said settlement was in full of all demands of either of said parties against the other, and thereupon, and at noon of January 5th, the sheriff withdrew; that the defendants Hillebrecht and Fuhrken took no part as private persons in the case, but acted, so far as they did act at all, as officers of the company, and not otherwise, save and except that they executed an undertaking as sureties only, and without malice or intent to injure plaintiff in any way or at all. Defendants further averred that the goods said to have been levied upon were not worth more than the sum of $2,018.15, plus costs and interest, and the wages of the servants of respondent.

There are twenty-eight assignments of error. We shall notice only those designated or referred to in the argument contained in the brief of counsel for the appellants.

Appellants argue, referring to assignments 1, 2, 3, 4, 5, 7, and 11, that "it was error to admit evidence relating to respond-

ent's amount of business, its profits prior to the attachment, the financial credit that he had, and what effect the attachment had upon his credit."

It is alleged and denied, respectively, that the business of the respondent at the time of the alleged levy was prosperous. In a case of malicious attachment and seizure without probable cause, it is not error to admit evidence as to loss of credit directly traceable to such levy and attachment suit. The weight of authority is to the effect that it is not error to admit evidence tending to show that by wrongful and malicious attachment the business credit of the alleged debtor has been injured. (Shinn on Attachment, 379, and cases cited; *Kennedy* v. *Meacham* (C. C.), 18 Fed. 312; *Tynberg* v. *Cohen* (Tex. Civ. App), 24 S. W. 314; Drake on Attachment (7th Ed.), 745; *O'Grady* v. *Julian,* 34 Ala. 88; *Flournoy* v. *Lyon,* 70 Ala. 308; 19 Am. & Eng. Enc. Law, 650, 651, 704, and citations.) The four cases, to-wit, *Lowenstein* v. *Monroe,* 55 Iowa, 82, 7 N. W. 406, *Campbell* v. *Chamberlain,* 10 Iowa, 337, *Mitchell* v. *Harcourt,* 62 Iowa, 349, 17 N. W. 581, and *Anderson* v. *Sloane,* 72 Wis. 566, 40 N. W. 214, 7 Am. St. Rep. 885, are *contra.* The Iowa court admits that there are courts which do not agree with it, and says that "in most of the other states" the rule is in conformity with *Campbell* v. *Chamberlain, supra,* but does not cite any case of these other states. The Wisconsin case does not, in terms, hold that recovery in case of wrongful and malicious attachment cannot be had for injury to credit resulting from such attachment.

The assignments are not tenable.

Referring to assignments not designated in the argument, appellants say that it was prejudicial "to permit Mr. Hayes to testify what he would have done if appellants did not agree to extend the time of the payment of the $200, and that he would let it stand, and take the chances of being attached." No attempt is made to argue this point, or to show why this was prejudicial, if it was. We are even left in the dark as to what $200 is referred to.

There is a suggestion in the brief that the court was incon-

sistent in permitting testimony to be introduced, over objection
of the appellants, relating to appellants' knowledge of respond-
ent's method of doing business, and whether or not he ever failed
to meet payments immediately after "pay day" at the East Hel-
ena smelter, and about his credit business, and what day of the
month was "pay day." It is also stated in the same paragraph
of the brief that these matters were not in issue in the case.
There was a smelter near respondent's store, the workmen in
which being his customers and accustomed to pay him their
accounts on the smelter pay day, as alleged by the respondent.
No reference is made to any particular one of the assignments,
or to any part of the 216 pages of the testimony. We cannot
go into this matter further than to say that this evidence, what-
ever it was, might have been pertinent to the issues.

Counsel say it was error to overrule appellants' motion to
strike out the testimony relating to the publication of the attach-
ment, and allowing other tesimony to be introduced on that sub-
ject. This doubtless refers to assignment 6, which is as follows:
"It was error to overrule appellants' motion to strike out the
testimony relating to the publication of the attachment through
Dun's Agency, and its being wired over the country, and in ad-
mitting other testimony upon the subject of the publication of
the attachment proceedings." No reference is made to the
parts of the transcript where the "other" testimony can be
found. It is argued that the court was wrong, because it was
not alleged in the complaint, or proven or attempted to be
proven, that appellants had anything to do with any publication
of the fact of such attachment. Counsel argues—First, that,
if not pleaded, publication cannot be proven; and, second, if
pleaded, proof may not be offered unless defendant was party
to such publication. In support of this point, appellants cite
three cases: *Maskell* v. *Barker,* 99 Cal. 642, 34 Pac. 340;
*Tynberg* v. *Cohen* (Tex. Civ. App.), 24 S. W. 314; and *Jami-
son* v. *Weaver,* 81 Iowa, 212, 46 N. W. 996. The complaint
in the *Maskell-Barker Case* alleged that the publication caused
the plaintiff much anxiety. It says nothing about credit. There
was an attempt to levy upon real estate; but, the writ not hav-

ing been levied in the manner and form as provided by the statute,—the constable, it was alleged, having received the writ, and filed a copy with the county recorder, with a description of the real estate sought to be levied upon, with a notice that it was attached,—the court held that this was not a levy, and declared in the opinion that the malicious suing out of a writ of attachment, without probable cause, without levying it upon the property of the alleged debtor, would not authorize a recovery by such party. This having been held, the addition of the remark that it did not appear that the defendant was in any way connected with the notices which it was alleged were published was not necessary to a determination of the cause, and the remark seems to be *obiter.* No authority is cited for any of the conclusions of the court in the case, and the remark referred to is not authoritative or persuasive.

The *Tynberg* v. *Cohen Case* is not in point, for that the announcement in the paper was not such as one expects to be made in a case of attachment. The newspaper falsely announced that the alleged debtor had failed in business. The court, in discussing the point, said: "The mere levy of the attachment * * * did not authorize such a publication." This language does not exclude the proposition that a levy of attachment would authorize a newspaper to state that an attachment had been levied.

The *Jamison-Weaver Case* is not in point. The court in that case held that it was not error "to refuse to allow the defendant to prove that his creditors had returned to him printed slips stating that he had been attached, and that notices had been sent to the commercial papers." It nowhere appears in the statement of that case that the levy of the attachment was alleged to be malicious and without probable cause. It was merely said to be wrongful. There is nothing to show that the defendant, in his counterclaim against the plaintiff, alleged damages for injury to his credit. The word "credit" does not appear in the opinion or in the statement of the case. Although the Iowa court says that the testimony was clearly inadmissible unless the publication was traced to the party suing out the writ, this remark

does not persuade us, as the case before us is one for malicious attachment, without probable cause, to the injury of the debtor's business credit.

Being of the opinion, as we are, that malicious attachment without probable cause is a ground of action, in the trial of which action testimony is admissible to prove injury to business credit, it follows, as we think, that it is proper to prove that the news of the attachment was published in the usual way to the world in general, and to the business world in particular. It is a matter of common knowledge that attachments, levy of execution, assignments, mortgages, and the like, tending to show business embarrassments and difficulties, are published for the information of all persons who are doing or who are likely to do business with the alleged debtors. It is a matter of common knowledge, also, that there are information agencies, long established, for the sole purpose of giving such information.

A point also relied upon is that there could be no testimony as to publication, since there was no allegation in the complaint of publication, and that the same is irrelevant, immaterial and incompetent, and that there is nothing to show that the defendants, or any of them, caused or induced such publication. If one rightfully and lawfully cause an attachment to be levied upon the property of a person in business, one naturally expects the fact of such attachment to be published to the business world, and that the credit of the person attached, if he have any, may be injured; but such a person is not liable in damages, for he has the right to levy the attachment to secure an honest debt. If the attachment be made maliciously and without probable cause, he is liable for damages to the alleged debtor, and damage to his business credit naturally follows, and such damage should be compensated. In Michigan (*Brand* v. *Hinchman*, 68 Mich. 590, 36 N. W. 664, 13 Am. St. Rep. 562) it is said that such publication naturally injured the credit of the person sued. The Michigan court does not cite any court's opinion in support of its declaration, but it was a question to be decided, and we agree with its views. If such injury is naturally to be expected, and such publication to be naturally expected, because

all business men and all people at large know that such publication is generally made of such facts, then there is no necessity to specially set up in the complaint what was intended to be proven, to-wit, the particular matter of publication, which, it was attempted to be proven, was one of the means of injuring the plaintiff's business credit; it being alleged in the complaint that the levying of the attachment injured the credit and business of the plaintiff. Under a general averment of malicious attachment of property, recovery may be had for the general loss of credit and mercantile character (13 Enc. Pl. & Prac. 453), and general publication of such attachment all over the country would be admissible evidence, tending to show such injury. The definition of malicious prosecution is not limited to criminal suits. (19 Am. & Eng. Enc. Law, 650, 704; *O'Grady* v. *Julian,* 34 Ala. 88; *Closson* v. *Staples,* 42 Vt. 209, 1 Am. Rep. 316.) The rules of evidence in suits for malicious prosecution for alleged crime apply here. An averment of arrest, imprisonment, and trial on a criminal charge authorizes a recovery for all the injury to reputation. (13 Enc. Pl. & Prac. 452, and cases cited.) In *Minneapolis Threshing Machine Co.* v. *Regier,* 51 Neb. 402, 70 N. W. 934, it was held that an uncolored statement of such arrest and trial, made by a newspaper, is a natural and probable consequence and a direct consequence of the institution of such proceedings, and the fact that the prosecution resulted in such publication may be shown, to aid the jury in estimating the damages. The Nebraska court cites *Filer* v. *Smith,* 96 Mich. 347, 55 N. W. 999, 35 Am. St. Rep. 603. There is, of course, a difference between one's reputation, which may be injured by the publication of one's arrest and trial for alleged crime, and one's business credit; but, by a parity of reasoning, it appears to us that if, in the one case, testimony as to publication is admissible to prove natural result of the tort, then it may be in the other to prove such result.

Complaint is made, and the point argued, that the court erred in excluding offered testimony to prove that the plaintiff herein, while the sheriff was at the store, settled the demands of the defendants in the attachment suit, procured the suit to be dis-

missed, and expressly waived all damages which he might have suffered from what he avers was a malicious attachment. Appellants say that the evidence was excluded on the ground of duress. Defendants set up, *inter alia,* payment, release, and waiver of damages. We do not think it is necessary to consider the point which has been made as to the absence of a replication, further than to remark that no replication was required at the time the answer was filed. It was for the jury to determine whether there was duress or not. The defendants certainly do not seem to have offered to prove that they coerced the plaintiff herein to settle. They asked their witness Mr. Newman certain questions as to what actually occurred and what was said at the time of the settlement. All this was objected to, and the court ruled it out. Then the defendants made a formal offer to prove the release and waiver, and the conditions thereof, and that the application to settle was made by plaintiff. This offer was rejected. It may have been shown that plaintiff did or said something then and there inconsistent with his material averments in his complaint. What was said and done by the parties to the conversation may have led the jury to believe that there was not any coercion or duress on the part of the appellants. If it should appear from the conversation that the then debtor (plaintiff herein) admitted that he owed the money, but, while claiming that it was not all due, saw and acted upon a chance to make an advantageous bargain for himself by threatening his creditors with a damage suit, and did make such a bargain, which would be better for him than paying the cash when it should fall due, and did offer to settle in such a way and release his creditors from all damages, would he not be the person who was taking advantage of the situation? Would this be coercion by his creditors? We do not intimate that such was the case, but it may have been, for all one can tell from the record as called to our attention in the briefs. The court should have let all the circumstances appear. It was alleged that plaintiff released his attaching creditors. This was an issue in the case. All the facts as to how such release, if granted, was given, should have

gone to the jury. If he was wrongfully and unlawfully coerced, this would have to appear to the jury, under proper instructions of the court, before he could avoid such release or waiver, and maintain his action for damages for the alleged malicious attachment. The court erred in rejecting the offer to prove the circumstances and conditions of the alleged settlement of the suit, and release of plaintiff's claim for damages.

As to the assignments and argument referring to the instructions given and refused, it is enough to say that we find no error in those given and assigned as erroneous. If the court had admitted the evidence offered to prove the circumstances of the alleged settlement, then instruction No. 4, refused, might, as the evidence might appear, have been proper, for it correctly states the law that waiver of a right to demand cash, and the accepting of something else of value in consideration of a lawful contract, is a good consideration to support such contract.

We do not notice the argument as to instruction No. 5, refused, for the reason that no assignment refers to that instruction.

Instruction No. 6, refused, is covered by instruction No. 11, given; hence it was not error to refuse the one asked by appellants.

We find no error in refusing to give defendants' instruction No. 13, it being contrary to the views expressed hereinbefore as to damages for injury resulting from the publication of the alleged attachment.

It was not error to refuse defendants' instruction No. 14, as it states, with other things, that, in a case of a "wrongful levy," "any damages that may have resulted to the defendant during the time the property was wrongfully detained" might be recovered. This is too broad. Neither a mere wrongful levy, nor a malicious levy, without probable cause, will warrant a recovery for "*any* damages to the defendant during the time the property was wrongfully detained." We add that malicious levy without probable cause is a wrongful levy, but not every wrongful levy is malicious; hence the defendants, in offering this refused instruction, should have added some apt word or

phrase to the word "levy," to show that they meant a wrongful levy without malice, if this is what they did mean. It was not error to refuse the instruction. In the instruction given, which seems to be a substitute for the one asked, the court improperly used the words "any damages."

Complaint is made in the argument that the court admitted some evidence, over the objection of the appellants, as to when the money owing by respondent was to be paid, according to an understanding and a long established practice, without express agreement, and that the court was emphatic as to its opinion that the evidence was admitted to corroborate the respondent, Hayes, and to show a contract, and, further, that the court inconsistently gave instruction No. 14. We see no error in the instruction. It is as follows: "If, by reason or pursuant to a uniform practice, extending through years, it was mutually understood by the defendant company and the plaintiff that the plaintiff was to have until 'pay day' of the succeeding month in which to pay for goods purchased during the month preceding, then he was entitled to such time, though it was never expressly and in so many words agreed between the parties; in other words, an agreement for time may be implied from the acts of the parties, the circumstances and conditions of their business relations, though express words may not have been employed to indicate their agreement."

The evidence is conflicting, and we cannot say that the court erred, on the hearing of the motion for a new trial, in holding that the evidence would support a verdict of damages in the sum of $1,000, to which amount the verdict was reduced by the court.

Because of the errors found and discussed herein, the order denying the motion for a new trial and the judgment are reversed, and the cause is remanded for a new trial.

*Reversed and remanded.*