PLYMOUTH GOLD MINING CO., RESPONDENT, *v.* UNITED STATES FIDELITY AND GUARANTY CO., OF MARYLAND, APPELLANT.

(No. 2,341.)

(Submitted January 9, 1907. Decided January 28, 1907.)

(88 Pac. 565.)

*Attachment—Action on Bond—Damages—Attorney's Fees—Impairment of Credit—Destruction of Business—Principal and Surety—Pleading and Practice—Demurrer—Motion to Strike.*

Demurrer—Pleading and Practice.

1. The purpose of a demurrer is to raise and have determined the question whether a pleading or cause of action, *taken as a whole,* states a case calling for a defense, and therefore cannot be directed to certain lines or paragraphs of a pleading alleged to contain immaterial matter.

Motion to Strike—Pleading and Practice.

2. A motion to strike must be resorted to for the purpose of purging a pleading of irrelevant or redundant matter.

Demurrer—Motion to Strike—Theory of Case—Appeal.

3. Where counsel for appellant did not submit a demurrer to the trial court as, in effect, a motion to strike out definite portions of the complaint, he will not be heard to say on appeal that the demurrer should have been regarded as a motion to strike.

Attachment—Action on Bond—Damages—Attorneys' Fees.

4. *Held,* that attorneys' fees, paid or agreed to be paid, for services rendered in having an attachment dissolved, fall within the purview of section 892 of the Code of Civil Procedure, providing that the undertaking on attachment shall be conditioned that if the defendant recover judgment, or if the court shall finally decide that the plaintiff was not entitled to an attachment, the plaintiffs will pay all costs and damages, etc., and that such fees may be recovered as an element of damage on the contract of the surety.

Same—Contract for Legal Services—Evidence.

5. While the contract price for legal services rendered in the dissolution of an attachment was not conclusive upon defendant in an action to recover on an undertaking on attachment, proof of the agreement was competent to go to the jury with other evidence tending to show what constituted a reasonable compensation for the services.

Same—Undertaking—Liability of Surety.

6. The liability of the surety on an undertaking on attachment is fixed by the terms and conditions of the contract itself, and cannot be extended by implication to matters not fairly covered by them.

Same—Undertaking—Its Scope.

7. An undertaking on attachment is a contract to indemnify the defendant in the action for all costs that may be awarded him and

all damages which he may sustain by reason of the attachment, if it be finally decided that the plaintiff was not entitled to have the writ issue.

Same—Action on Bond—Damages—Impairment of Credit—Destruction of Business.

8. Damage to plaintiff mining company's credit, destruction of its business, and loss of its property through sales under judgments secured by its employees for wages due at the time an attachment was issued on its real property, *held* not to have been the proximate, but the remote, consequences of the attachment, for which the surety on the undertaking on attachment could not be held liable, where the possession of plaintiff of its mining premises was not disturbed by the levy, and where it was left at liberty to continue its mining operations.

Same—Bond—Surety—Extent of Liability.

9. A surety on an undertaking on attachment cannot be held accountable for the malicious motives which actuated the plaintiffs in an attachment suit in invoking the process.

*Appeal from District Court, Lewis and Clark County; J. M. Clements, Judge.*

ACTION by the Plymouth Gold Mining Company against the United States Fidelity and Guaranty Company of Maryland. From a judgment in favor of defendant, and from an order denying defendant's motion for a new trial, it appeals. Reversed and remanded.

*Mr. S. A. Balliet,* for Appellant.

*Messrs. Walsh & Newman,* for Respondent.

It is held by the great weight of authority that the attorney's fees to procure the dissolution of an attachment is a proper element of damages. (*Tyng* v. *American Surety Co.,* 174 N. Y. 166, 66 N. E. 668; *Gregory Grocery Co.* v. *Beaton,* 10 Kan. App. 256, 62 Pac. 732; *Bank* v. *Mayer,* 96 Ga. 728, 24 S. E. 453; *Buckley* v. *Vandiver,* 70 Miss. 622, 12 South. 905; *Raymond Bros.* v. *Green,* 12 Neb. 215, 41 Am. Rep. 763, 10 N. W. 709; *Territory* v. *Rindskopf,* 5 N. Mex. 93, 20 Pac. 180; *Bucki etc. Co.* v. *Fidelity & Deposit Co.,* 109 Fed. 393, 48 C. C. A. 436.)

Impairment of the plaintiff's credit is an element of damages. (*Hayes* v. *Union Mercantile Co.,* 27 Mont. 264, 70 Pac. 975. See, also, 4 Cyc. 879; *Marx* v. *Leinkauff,* 93 Ala. 453, 9

South. 818; *Flournoy* v. *Lyon,* 70 Ala. 308; *Durr* v. *Jackson,* 59 Ala. 203; *Goldsmith* v. *Picard,* 27 Ala. 142; *Donnell* v. *Jones,* 13 Ala. 490, 48 Am. Dec. 59; *Meyer* v. *Fagan,* 34 Neb. 184, 51 N. W. 753; *Brewer* v. *Jacobs,* 22 Fed. 217; *Kennedy* v. *Meachem,* 18 Fed. 312; *Kauffman* v. *Armstrong,* 74 Tex. 65, 11 S. W. 1048; *Bucki etc. Co.* v. *Fidelity etc. Co.,* 109 Fed. 393, 48 C. C. A. 436; *Moore* v. *Schultz,* 31 Md. 418.)   Furthermore, if the plaintiff was, by reason of the attachment, prevented from selling his land, procuring a loan upon the security thereof, or his mining stock, and the attachment was the direct cause of preventing such sale or loan, and he was damaged thereby, it would be a proper element of damages.

That the complaint does not state facts sufficient to constitute a cause of action is good ground for dissolving an attachment.   (*State* v. *McHale,* 16 Mo. App. 478; *Brownlee* v. *Fenwick,* 103 Mo. 420, 15 S. W. 611; *Hammerslough* v. *Kansas City B. L. Assn.,* 79 Mo. 80; *Solomon* v. *Chesley,* 59 N. H. 24; *Seay* v. *Greenwood,* 21 Ala. 491; *Trentman* v. *Wiley,* 85 Ind. 33.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Action against the appellant to recover damages against it as surety upon an undertaking on attachment, issued in an action wherein James Porter and George Swan were plaintiffs and the Plymouth Gold Mining Company, the respondent herein, was defendant, and also upon an undertaking on *supersedeas,* executed and filed in the same case on appeal by Porter and Swan to this court, to keep the attachment in force pending the appeal. The case of *Porter and Swan* v. *Plymouth Gold Mining Company* was brought in 1901 to recover a judgment for $2,000, with interest thereon, alleged to be due upon a contract entered into by the plaintiffs and defendant herein.   To secure the payment of any recovery which might be had, the plaintiffs caused an attachment to issue therein and to be levied on certain mining property belonging to respondent, consisting of mining claims and a mill used in connection therewith for the reduction of ores.

The complaint sets forth a history of that case and alleges that the respondent, having employed counsel for that purpose, secured an order dissolving the attachment and at the same time a judgment on demurrer in its favor, which judgment and order were each, on appeal to this court, affirmed. The theory of the complaint is that recovery could be had for counsel fees paid by respondent for securing the order of dissolution, for injury to its credit, for destruction of its business, and for loss of its property, which was sold during the progress of the litigation, under judgments secured by men in the employment of respondent at the time the attachment was levied in proceedings instituted by them to foreclose liens upon respondent's property for wages then due. It contains allegations of these special elements of damage above enumerated, and demands judgment for the full penalty of both undertakings.

To the complaint the defendant interposed a general and special demurrer; this having been overruled, the defendant answered admitting the bringing of the attachment suit, the execution of the undertaking on attachment, the issuance and levy of the attachment, the making of the order of dissolution, the taking of the appeal, and the execution of the undertaking on *supersedeas,* and the ownership of the property by respondent, but denies generally or specially all the other averments in the complaint. A trial resulted in a verdict in favor of the plaintiff. From a judgment entered thereon, and from an order denying its motion for a new trial, the defendant has appealed.

Appellant contends that the court erred in overruling the demurrer and in submitting instructions to the jury, and that the evidence is insufficient to sustain a verdict for more than nominal damages.

1. While conceding that the complaint states a cause of action for nominal damages, and therefore that the general demurrer was properly overruled, appellant insists that, in so far as it alleged special grounds of objection to the complaint, it should have been sustained. This contention is without merit. Under

sections 681 and 682 of the Code of Civil Procedure, the demurrer must specify objections to the complaint, or one or more of the separate causes of action stated therein, as a whole. The special objections made by the demurrer in this case were not directed at the pleading as a whole, but at particular lines or paragraphs containing allegations which appellant deemed immaterial and as constituting elements of damage for which recovery could not be had.

The purpose of a demurrer is to raise and have determined the question whether the pleading or cause of action at which it is directed, taken as a whole, states a case calling for a defense. Its aim is to uproot and cast out the whole pleading. (*Bank of Commerce* v. *Fuqua,* 11 Mont. 285, 28 Am. St. Rep. 461, 28 Pac. 291, 14 L. R. A. 588, Bliss on Code Pleading, 3d ed., sec. 417.) For the purpose of purging a pleading of irrelevant and redundant matter, a motion to strike must be resorted to. (Code Civ. Proc., sec. 742.) This may be, in effect, a demurrer to the portion of the pleading to which objection is made (*Bank of Commerce* v. *Fuqua, supra*); nevertheless, its office cannot be performed by a demurrer. Under the provisions of the Code, the demurrer and motion each has its own separate and distinct office.

It is said, however, that the special demurrer was, in effect, a motion to strike out definite portions of the complaint, and that the court should have so regarded it. Counsel, however, did not submit it to the court on that theory, and he cannot now be heard to say that it did not so regard it.

2. The plaintiff was allowed, over defendant's objection that it was irrelevant, immaterial, and incompetent, to introduce evidence tending to show that, after the attachment was issued and levied, it employed and agreed to pay counsel $1,000 to secure an order of dissolution, and that this amount was a reasonable compensation for the work done. This was on the theory, entertained by court and counsel, that the plaintiff was entitled to recover as damages a reasonable fee paid or agreed

to be paid for this particular service. It is argued that this was error, first, because no recovery may be had under the statute for counsel fees, and second, because in no event may recovery be had for such fees unless it appears that they have actually been paid.

The courts of many of the states hold that such fees are not a proper element of damage for the wrongful suing out of either injunctions or attachments. In High on Injunctions (fourth edition), however, it is said that, according to the great weight of authority, reasonable counsel fees incurred in procuring the dissolution of an injunction are a proper element of damage, the amount recoverable being limited to the fees paid for procuring the dissolution and not for the general defense of the case. (Id., sec. 1685.) Courts so holding proceed upon the theory that the defendant has been compelled to incur the expense in order to rid himself of the restriction wrongfully imposed upon him by the plaintiff. For the same reason the recovery is limited to the actual expense of procuring the removal of the restriction, pending the litigation and before a hearing on the merits. (Id., sec. 1686.) This rule was adopted by the territorial supreme court of Montana in the early case of *Parker* v. *Bond,* 5 Mont. 1, 1 Pac. 209, was followed in the case of *Miles* v. *Edwards,* 6 Mont. 180, 9 Pac. 814, and by subsequent decisions has become the established rule of this court. (*Creek* v. *McManus,* 13 Mont. 152, 32 Pac. 675; *Cook* v. *Greenough,* 14 Mont. 352, 36 Pac. 357; *City of Helena* v. *Brule,* 15 Mont. 429, 39 Pac. 456, 852; *Montgomery* v. *Gilbert,* 24 Mont. 121, 60 Pac. 1038.) In all of these cases recovery was had under a statute which requires an undertaking to the effect "that the plaintiff will pay to the party enjoined such damages, not exceeding an amount to be specified, as such party may sustain by reason of the injunction, if the court finally decide that the plaintiff was not entitled thereto." (Code Civ. Proc., sec. 874.) The conditions of the undertaking on attachment are substantially the same. Section 892 (Id.) declares that it shall be conditioned to the effect

"that if the defendant recover judgment, or if the court shall finally decide that the plaintiff was not entitled to an attachment, the plaintiff will pay all costs that may be awarded to the defendant, and all damages he may sustain by reason of the issuing of the attachment, not exceeding the sum specified in the undertaking."

The question is a new one in this state, but, if counsel fees come within the provisions of section 874, by the same rule of construction they fall within the purview of section 892, and may be recovered as an element of damage on the contract of the surety.    The following cases, decided by other courts, are in point: *Tyng* v. *American Surety Co.,* 174 N. Y. 166, 66 N. E. 668; *Gregory Grocery Co.* v. *Beaton,* 10 Kan. App. 256, 62 Pac. 732; *Fourth Nat. Bank* v. *Mayer,* 96 Ga. 728, 24 S. E. 453; *Buckley* v. *Van Diver,* 70 Miss. 622, 12 South. 905; *Raymond Bros.* v. *Green & Co.,* 12 Neb. 215, 41 Am. Rep. 763, 10 N. W. 709; *Territory* v. *Rindskopf & Co.,* 5 N. Mex. 93, 20 Pac. 180; *Higgins* v. *Mansfield,* 62 Ala. 267; *Bucki etc. Co.* v. *Fidelity etc. Co.,* 109 Fed. 393, 48 C. C. A. 436; *Gonzales* v. *De Funiak etc. Tobacco Co.,* 41 Fla. 471, 26 South. 1012.

Nor do we think it matters that the fees contracted for have not actually been paid.    Here again the courts are at variance. But this question was directly decided by this court in *Cook* v. *Greenough, supra,* wherein it was held that proof that the plaintiff had become liable for attorneys' fees was sufficient to sustain a verdict in his favor in a suit on an injunction bond. This is the rule in Nebraska, Alabama, New York, Missouri, and perhaps in other states.    (*Raymond* v. *Green & Co.,* 12 Neb. 215, 41 Am. Rep. 763, 10 N. W. 709; *Higgins* v. *Mansfield,* 62 Ala. 267; *Epstein* v. *United States Fidelity Co.,* 29 Misc. Rep. 295, 60 N. Y. Supp. 527; *State* v. *Beldsmeier,* 56 Mo. 226; *State* v. *Gage Bros. & Co.,* 52 Mo. App. 464; 4 Cyc. 886.)

The contract price for the services stipulated for between the plaintiff and its counsel was not conclusive upon the defendant, but proof of their agreement was competent to go to the jury

with other evidence tending to show what in fact was a reasonable compensation.

We think the court erred, however, in overruling the objections of the defendant to the evidence tending to show damage to plaintiff's credit, the destruction of its business, and the loss of its property through sales under the judgments secured by employees for wages due at the time the attachment was levied. An undertaking on attachment is a contract to indemnify the defendant for all costs that may be awarded him and all damages which he may sustain by reason of the attachment, if it be finally decided that the plaintiff was not entitled to have it issue. "For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which in the ordinary course of things would be likely to result therefrom." (Civ. Code, sec. 4300.) The liability of the surety is fixed by the terms and conditions of the contract, and may not be extended by implication to matters not fairly covered by them. Here the property levied upon was real estate. The plaintiff's possession of it was not disturbed. It was left to pursue its mining operations, not only pending the litigation, but during the whole period of redemption, even if Porter and Swan had secured judgment and sold it under execution. Under such circumstances the defendant could not have contemplated that the employees of plaintiff would quit work and institute proceedings to enforce their liens for wages due, thus interrupting plaintiff's business. But, even so, the institution of these proceedings did not disturb respondent's possession. Nor could it have reasonably anticipated that financial embarrassment would be a direct result to respondent from the levy of the attachment, or that its credit would be so far impaired that it could not borrow money or sell its stock. None of these results were the proximate, but all the remote, consequences of the attachment. Such matters might well be considered as elements of damage in an action by the plaintiff against Porter and Swan for maliciously suing

out the attachment (*Hayes* v. *Union Merc. Co.*, 27 Mont. 264, 70 Pac. 975), but with their motives and the cause they had for invoking the process the defendant had nothing to do. It cannot be held upon its contract for consequences of the wanton and malicious acts of Porter and Swan, which would support an action for tort against them. (*Elder* v. *Kutner*, 97 Cal. 490, 32 Pac. 563; *Heath* v. *Lent*, 1 Cal. 410; *Trawick* v. *Martin-Brown Co.*, 79 Tex. 460, 14 S. W. 564.)

3. Having admitted this evidence the court formulated its instructions upon the theory that recovery could be had for the remote consequential damages which plaintiff sought to establish by it. In view of what has already been said, it will not be necessary to notice the instructions in detail. Upon another trial the court will make them conform to the views herein expressed, excluding from the consideration of the jury elements of damage sought to be established by the evidence referred to.

4. The evidence touching the employment of counsel is not entirely clear as to whether the employment was for the purpose of securing the order of dissolution alone, or whether it did not include, also, a trial of the case on the merits. We think it presents a question for the jury as to how this was. Since there must be a new trial on the ground that the court submitted immaterial issues, we refrain from further consideration of the evidence.

The judgment and order are reversed, and the cause is remanded for a new trial.

*Reversed and remanded.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SMITH concur.